FRANK M. WISELEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18607. Promulgated August 24, 1949.

*Roger K. Powell, Esq.*, and *D. Curtis Reed, Esq.*, for the petitioner.
*Clarence E. Price, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge*: The taxpayer is a doctor who has engaged in the practice of medicine at Findlay, Ohio, a city of some 26,000 persons, since 1931.

We are concerned with two issues: (1) Determining the amount of the deficiency in taxes, if any, for the year 1942, and (2) the correctness

of the Commissioner's holding that petitioner filed false and fraudulent returns for each of the years 1942, 1943, 1944, and 1945, with intent to evade taxes due.

For the year 1942 taxpayer filed a timely return, reporting $7,874.14 as gross income and $7,423 as net income. He showed $808.12 as dividends, $119 received from interest, $717.75 gain on sale of capital assets, and $6,229.27 profit from profession. No books of record for the year 1942 being made available to the respondent's agent who was assigned to audit petitioner's returns, the Commissioner determined taxpayer's income for 1942 by resorting to the "net worth method." He used bank records, mortgage and real estate records, brokerage accounts, bond records, and various other sources and consulted with taxpayer's accountant as to petitioner's holdings. From all of these sources he determined taxpayer's net worth at the first of the year 1942 to be $46,774.65 and at the end of the year to be $63,578.67, being an increase of $16,804.02, from which he deducted $1,686.67 allowable deductions, and added $3,600 living expenses not reflected above, indicating a net income for 1942, after adjustment, of $18,717.35 and resulting in a tax deficiency of $4,203.94. To the above deficiency he added a penalty for fraud in the amount of $2,101.97. The largest item of increase in petitioner's investments was that of Government bonds, as to which petitioner owned $11,775 at the beginning of the year and $19,587 at the close of the year.

At the hearing petitioner offered nothing to account for the absence of records and, except for minor corrections, made no effort to refute the correctness of respondent's determination of net worth and the resultant income for 1942. It would appear to be more than mere coincidence that when in 1947 an amended return for 1943 was filed and the tax for 1942 constituted a factor in determining the amount of tax to be paid in 1943, the petitioner showed a tax liability for 1942 of $4,941, such sum being arrived at by the computation of the tax due on an $18,000 net income.

On the instant record, considering the unexplained absence of records for 1942, we are of the opinion that the respondent was fully justified in using the net worth method in computing the petitioner's income. His right so to do in such situations has been recognized by the courts so frequently as to require no citation of authority. We hold that the petitioner, on whom rested the burden of proof of error as to the deficiency, has not shown the amount determined by the respondent to be erroneous, and, accordingly, we affirm the deficiency.

The remaining issue is that of fraud, the burden of proof resting on the respondent.

The petitioner filed timely returns for each of the years 1942 to 1945, inclusive, and showed net income as appears below. On April 10,

1947, he filed amended returns for the last three years, returning income in the amounts hereinafter shown:

| Year | Net income per original return | Net income per amended return |
|------|-------------------------------|-------------------------------|
| 1942 | $7,423.00 | (None filed) |
| 1943 | 5,645.31 | $31,307.74 |
| 1944 | 5,089.94 | 37,333.80 |
| 1945 | 5,979.49 | 33,933.27 |

When petitioner filed the amended returns above referred to he paid additional tax in the total amount of $44,000.07.

Under date of March 17, 1948, the Commissioner notified petitioner of his determination of deficiencies in income tax and penalties for fraud, as appears hereinafter. The Commissioner's computations were based on petitioner's original returns.

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 1942 | $4,203.94 | $2,101.97 |
| 1943 | 12,878.26 | 6,149.20 |
| 1944 | 16,446.49 | 8,373.25 |
| 1945 | 13,882.25 | 7,110.88 |

The amount paid by petitioner when filing his amended returns is greater than the aggregate of the deficiencies determined for the years 1943, 1944, and 1945, and the deficiencies for those years were not put in issue. Only the deficiency for 1942, as to which no amended return was filed, and the penalties for all four years, are being contested.

The testimony reveals that petitioner, for the years 1943, 1944, and 1945, kept a complete daily record of all calls, services rendered, and charges made. At the bottom of the printed form on which these records were kept were items of collections made during the day. All of these records were entered daily. The items of collection varied in number from day to day from none to a maximum of 19 items. The total number of items of collections for the year 1943 was 1,915, an average of less than 6 per day. The entries on these records, which were all made by an assistant in petitioner's office, were not totaled each day currently. Both petitioner and his nurse assistant, who kept the books, explained and insisted that during all of these years they were so busy that the assistant never had time to total the entries at the close of the day. It was also stated that she had a long sick spell. The daily totals were not entered on the books, nor was the yearly aggregate for three years ascertained until late in 1946 or early in 1947, shortly before the amended returns were filed.

When it came time to prepare his income tax return petitioner testifies that he merely estimated his income. He did not reveal to the

revenue agent who assisted him in preparing his return that the income figure was estimated. Petitioner never revealed to his office assistant the amount of income returned for taxation. As to the office expense, however, the assistant, who made most of the disbursements, computed the same by resorting to check stubs, invoices, and other day-to-day memoranda. The figures thus obtained were so accurate that the revenue agent accepted petitioner's totals of expenses.

Additional facts revealed by the record are that the petitioner had an office safe where he kept checks and cash until they were either deposited in the bank or placed in a safety deposit box; that he bought approximately $10,430 worth of Government bonds in 1943 for cash and in 1944 he bought two Government bonds of $5,000 each, paying for the same with cash; that deposits in one bank were approximately $15,000 for each of the three years; that total expenses and investments in 1944 approximated $45,000; and that on August 31, 1944, he made two deposits in different banks of $5,000 each.

To obtain an accurate record of petitioner's gross income from his profession for any year required only the totaling of the daily items of collections, aggregating, as above stated, for the year 1943, 1,915 items, requiring at the most a few hours' work, much less of a task than to compute the several items of expense deductions.

In the face of the facts here revealed, we see no alternative by which petitioner can escape the normal and logical consequence of his conduct. It matters not that he personally was busy to the point of distraction (which fact we do not doubt). He did not keep the records. Nor is it controlling or vitally important that his nurse assistant was equally busy. In a matter as important as making a correct return for income taxation, time could have been found to run the requisite totals. It was a simple job and a short one. Had petitioner desired honestly to make a correct return, something else could have been left undone and the figures secured. Petitioner is an intelligent man. He had made tax returns for years before. He can not plead ignorance of his duty to make a correct return. The obligation of the citizen to his government is not thus lightly to be put aside.

As we have remarked on other occasions similar to this, by resolving all doubts in petitioner's favor, we might conceivably be convinced by petitioner's testimony that the situation was the result of unfortunate circumstances and the stress of business if the situation applied to one year only. But where the same pattern is followed for three or four years in succession, where all parts of the pattern integrate so as to lessen tax liability, and where the same design is apparent at all times, it goes beyond mere accidental error or explainable mischance. It betokens a plan or course of conduct through all four of the years to defraud the Government of taxes due. See *M. Rea Gano*, 19 B. T. A. 518, 533.

We hold petitioner to be guilty by clear and convincing evidence of filing false and fraudulent returns for each of the years 1942, 1943, 1944, and 1945. The fact that petitioner, after filing such fraudulent returns, later filed amended returns and paid the taxes shown to be due thereon does not bar the Commissioner from determining that the original returns were fraudulent and finding penalties accordingly. *Aaron Hirschman*, 12 T. C. 1223.

*Decision will be entered under Rule 50.*