Mark J. Davis and Winnie B. Davis v. Commissioner.
Davis v. Commissioner
Docket No. 19066.
United States Tax Court
1949 Tax Ct. Memo LEXIS 75; 8 T.C.M. (CCH) 881; T.C.M. (RIA) 49239; September 20, 1949
*75 P. J. Coffey, Esq., Northwestern Bank Bldg., Casper, Wyo., and Harold N. Rogers, Esq., for the petitioners. Thomas A. Steele, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income and victory taxes and penalties of Mark J. Davis and Winnie B. Davis, for the years 1941, 1942, 1943 and 1944, as follows: 50%
Year
Kind of Tax
Deficiency
Penalty
1941
Income
$ 4,480.31
$2,240.16
1942
Income
3,353.56
1,676.78
1943
Income and Victory
4,217.81
2,108.91
1944
Income
13,034.18
6,517.09
The petitioners have conceded the correctness of the adjustments made by the respondent to their income for the taxable years here involved and have paid the deficiencies in tax determined by respondent. The only issue presented here for decision is whether respondent erred in his determination that some part of the deficiency in tax for each of the years 1941, 1942, 1943 and 1944, is due to fraud with intent to evade tax and in his imposition of the 50 per cent fraud penalty on the the total deficiency for each of those years. Because of his proposed assessment of the *76 fraud penalty with respect to the year 1942, respondent has denied to petitioners the benefit of the forgiveness feature of section 6 of the Current Tax Payment Act of 1943. Since a determination that petitioners' return for 1942 was fraudulent is prerequisite to respondent's action, our decision as to whether petitioners' return for 1942 was fraudulent will have a direct effect upon the basic tax liability for 1942 and 1943. Findings of Fact Petitioners, Mark J. Davis and Winnie B. Davis, hereinafter referred to individually as th& petitioner and the petitioner's wife, are husband and wife, residing in Casper, Wyoming. They filed joint income tax returns for each of the calendar years 1941, 1942, 1943 and 1944, with the collector of internal revenue for the district of Wyoming. The petitioner has been in the sheep raising business since 1906 or 1907. He was educated through the sixth grade and also took some preparatory courses to enter the University of Wyoming, but never entered the university. The petitioner's wife has a high school education. Her father died in 1915, leaving her an orange grove in California, two sheep ranches in Wyoming, livestock, and securities. The *77 petitioners were married in 1921. The securities were sold and part of the proceeds was used to purchase a home in Casper in 1925 at a cost of $30,000. The petitioners have a son born in 1922 and a daughter born in 1923. During the taxable years here involved and for many earlier years the petitioner, Mark J. Davis, has personally managed his ranch operations. During the taxable years 1941 through 1944 he did his own banking and personally maintained a cash journal to record proceeds from ranch sales and expenditures in ranch operations. He also kept his bank statements and canceled checks from his bank in Casper. In some instances where the proceeds from ranch sales were paid direct to petitioner's bank by purchasers they were not deposited but were credited on his notes payable by the bank. He kept memorandum statements of such transactions as a part of his records. Also, some checks which he received during the years 1941 through 1944 from the Agricultural Adjustment Administration in payment for work done on his ranch were endorsed by him over to the contractors who did the work without keeping any record of them. Since 1915 the petitioner, Winnie B. Davis, has operated the *78 California orange grove which she inherited from her father. For the taxable years 1941 through 1944 she employed a man to work regularly in the grove, but she went to California and managed the grove personally each year from early January to some time in March or April. She also employed a co-operative marketing association in California to pick and market her crop of oranges. The association furnished all supplies for the grove, picked and marketed the crop, and, after deducting their charges and costs, deposited the balance of the proceeds from sales to her credit in a Pomona, California, bank. During the four years here involved the association periodically sent itemized statements to her showing the financial details of her business, including gross sales, expenses of operations and net profits. At the end of each year the association supplied her with a full financial report of her grove operations, showing the annual net profits from operations. She kept the financial reports from the association as her financial records of the grove. For each of the taxable years here involved the amount of net income reported by petitioners, the amount of corrected net income shown on respondent's *79 deficiency notice, and the amount of net income understated are as follows: Reported
Corrected
Understatement
Year
Net Income
Net Income
of Income
1941
$ 1,396.64
$19,719.81
$18,323.17
1942
(944.49)
13,177.79
14,122.28
1943
1,667.25
14,456.38
12,789.13
1944
1,788.64
29,567.96
27,779.32
$ 3,908.04
$76,921.94
$73,013.90
Respondent determined the amounts of correct net income of the petitioners for each of the years here involved by making the following adjustments of the petitioners net income: Income Tax
Victory Tax
Net Income
Net Income
Year 1941
Net income disclosed by return
$ 1,396.64
Omissions from business income and unallowable deductions
19,046.59
Total
20,443.23
Non-taxable income and additional deductions
723.42
Corrected net income
$19,719.81
Year 1942
Net income as disclosed by return (Loss)
(944.49)
Omissions from business income and unallowable deductions
15,822.98
Total
14,878.49
Non-taxable income and additional deductions
1,700.70
Corrected net income
$13,177.79
Year 1943
Net income as disclosed by return
$ 1,667.25
$ 1,679.25
Omissions from business income and unallowable deductions
13,219.97
13,563.34
Total
15,230.59
15,242.59
Non-taxable income and additional deductions
774.21
Corrected net income
$14,456.38
$15,242.59
Year 1944
Net income as disclosed by return
$ 1,788.64
Omission from business income and unallowable deductions
28,652.21
Total
30,440.85
Non-taxable income and additional deductions
872.89
Corrected net income
$29,567.96
*80 The omissions from taxable net income and unallowable deductions taken by petitioners in their income tax returns for the years 1941 through 1944 were: 1941
1942
1943
1944
Omitted ranch sales
$12,995.46
$ 752.10
$13,400.80
Omitted grove sales
3,590.94
$3,446.23
3,796.59
10,167.32
Omitted truck rentals
1,328.42
Omitted fees
30.00
30.00
Omitted dividends
100.00
Omitted interest
95.41
Personal expenditures deducted as business ex-
penses
929.43
2,880.10
2,322.77
755.69
Excessive depreciation deductions (ranch & grove)
5,068.97
5,177.42
6,530.11
3,330.10
The petitioners were unable to explain the omissions of net income and the excessive deduction claims in any of the returns for the four years here involved. Expenditures by the petitioners for nonbusiness purposes included purely personal expenses, capital expenditures, and reductions of notes payable amounting to $30,016.15 in 1941, $13,659.04 in 1942, $16,248.08 in 1943, and $13,277.06 in 1944. The petitioners maintained three automobiles in the family. During most of the taxable period here involved both children were in college and the petitioner's *81 wife paid most of their living expenses. The petitioners' net worth, not including their residence, ranch lands, and other properties, was $82,151.14 on January 1, 1941. On December 31, 1944, it was $102,933.29, showing an increase in net worth during the four years here involved of $20,782.15. Beginning in 1921 and including all the taxable years here involved, the petitioners' income tax returns were prepared by C. H. Reimerth, a certified public accountant, or members of his office staff in Casper. The petitioner paid an annual fee of $50 for this records from which the accountants prepared the annual tax returns. After each return was prepared, the petitioner, Mark J. Davis, was called to the office of the accountant where he was shown his return and told how much tax was due. He then signed the returns and wrote checks to pay the tax. During the years 1941 through 1944 his wife never saw the returns after they were prepared. She signed two of the returns in blank but did not sign the other two at all, although all four of the returns purported to be joint returns. An internal revenue agent first examined the petitioners' books and records with respect to the calendar years *82 1937 through 1940 early in January 1942. At that time, and from time to time thereafter during the course of the revenue agent's investigation of the petitioners' tax liability for those years, he repeatedly explained to the petitioner, Mark J. Davis, and to his accountant that the excessive deductions for depreciation taken in those years resulted from an arbitrary increase in the depreciation bases of the petitioners' ranch and grove properties and that such an arbitrary increase in the bases of the properties over their previously shown cost bases was not allowable. As the result of the revenue agent's examination of the petitioners' records for the years 1937 through 1940, petitioners' taxable income was increased for those years over the amounts reported in their income tax returns by the following adjustments: 1937
1938
1939
1940
Excessive depreciation deductions disallowed
$ 6,635.83
$5,792.03
$ 5,489.65
$ 4,558.47
Ranch and other income increased
7,543.63
3,953.45
5,667.13
5,752.71
Worthless loss disallowed
4,840.00
Total increase to income
$19,019.46
$9,745.48
$11,156.78
$10,311.18
The petitioners paid the deficiencies determined *83 in income tax for 1937 through 1940, on the basis of the revenue agent's report, without contesting their correctness. However, they continued to use the increased depreciation bases of their properties without change throughout the taxable years here involved. Although the financial statements prepared for the petitioner's wife to summarize the results and profits of her grove operations were readily understandable to the investigating revenue agent for each of the years here involved, the annual expenses of grove operations were deducted from annual gross income twice by the petitioners to compute the net profits from the grove. The petitioner's wife testified that she had examined all statements to ascertain how much she made each year from her grove. As late as December 31, 1944, the petitioner, Mark J. Davis, personally determined that his ranch sales of wool and of lambs during 1944 amounted to $26,310.90 and $19,273.40, respectively. However, on the petitioners' income tax return for that year those sales were reported as $15,210.10 and $16,974, respectively. The petitioner testified that he had never checked these sales and that he had never looked beyond the face of his *84 income tax return. With the exception of $91.71 for 1943 and $155 for 1944, petitioners reported no tax due on each of their income tax returns filed for the eight calendar years, 1937 through 1944. Part of the deficiency for each of the taxable years 1941, 1942, 1943 and 1944, is due to fraud with intent to evade tax. Opinion LEMIRE, Judge: The petitioners contend that respondent erred in determining that some part of the deficiency in tax for each of the years 1941 through 1944 is due to fraud with intent to evade tax. They argue that respondent's determination rests only upon a presumption of fraud created by the size of the deficiencies and that there is no clear and convincing proof of fraudulent intent to evade tax by the petitioners in any of the years involved. We agree with the petitioners' contention that fraud must be established by more than the mere preponderance of evidence needed to sustain the burden of proof in an ordinary civil case. Respondent must produce clear and convincing proof of the existence of fraud. M. Rea Gano, 19 B.T.A. 518. However, respondent has no burden to prove his case beyond a reasonable doubt since the nature of the penalty *85 respondent here seeks to impose is civil rather than criminal in character. Helvering v. Charles E. Mitchell, 303 U.S. 391. Respondent has produced evidence in great detail that petitioners have been people of considerable means for many years, enjoying substantial amounts of income from several sources and spending substantial amounts for their purely personal living expenses. We find it impossible to believe that they did not know, as they testified, approximately the amounts of income which they had. It is true that they did not maintain elaborate accounting records for their business activities and that they always had their tax returns prepared for them by an accountant. However, they did a substantial part of their own banking and record keeping and had complete financial records prepared for them for each of their operations which they did not personally supervise. All of the adjustments of the petitioners' net income for the taxable years here involved were derived from the records of the petitioners. The petitioners would have us believe that they are uneducated people who were completely ignorant of the federal income tax laws. However, they have both supplemented *86 their formal education with knowledge gained from many years of active and successful business experience. They cannot credibly disclaim all awareness of how much money passed through their hands during each of the four taxable years here involved. The petitioners were repeatedly told by the internal revenue agent who investigated their income tax returns for the four years immediately preceding the four years here involved that they were claiming improper and excessive deductions. Major adjustments of income for earlier years were made for those years and the petitioners paid the resulting deficiencies without contesting their correctness. Yet they continued to claim excessive deductions and to omit substantial items of taxable income with a consistency which indicates a persistent pattern of evasive practice over an eight year period from 1937 to 1944. It is conceivable that the petitioners might make errors in their returns or calculate their taxes with greatly different results from those reached by respondent due to different or contradictory theories of tax computation. The petitioners here do not have that excuse. During the four years here involved the petitioners reported *87 only slightly more than 5 per cent of their real net income for those years, never reporting as much as 12 per cent of their true income for any year. Such discrepancies between the real net income and the reported net income for four successive years strongly evidence an intent to defraud the Government. Cf. Rogers v. Commissioner, 111 Fed. (2d) 987, affirming 38 B.T.A. 16. Where the same pattern has been followed for four years in succession, always with the effect of sharply lessening tax liability, an intentional design to evade taxes by the filing of fraudulent returns is apparent. See Frank M. Wiseley, 13 T.C. 253 (Aug. 24, 1949), and M. Rea Gano, supra. The petitioners testified that they knew nothing of the workings of the federal tax laws but depended entirely upon their accountant for the correct preparation of their tax returns. The petitioner further testified that he was shown the returns and told the amount of tax due and that he signed the returns without looking beyond the first page of each return. The petitioner's wife never looked at the returns but signed them in blank when she signed them at all. The petitioners *88 cannot shift the personal responsibility of making a correct tax return to others. That responsibility must be borne by the petitioners themselves. The returns were theirs. That they assumed a completely indifferent attitude toward accuracy and fairness in their dealings with the Government cannot shield them from the consequences of filing false returns. Charles E. Mitchell, 32 B.T.A. 1093; Harry Feldman, 34 B.T.A. 517; M. Rea Gano, supra; Frank M. Wiseley, supra. We hold the petitioners to be guilty by clear and convincing evidence of filing false and fraudulent returns for each of the years 1941, 1942, 1943 and 1944. Respondent's imposition of the 50 per cent fraud penalty under the provisions of section 293 (b) of the Internal Revenue Code with respect to each of those years was correct. It follows that respondent was correct in denying to petitioners the benefit of the forgiveness feature of section 6 of the Current Tax Payment Act of 1943 with respect to the year 1942, since that subsection provides that it "shall not apply in any case in which the taxpayer is convicted of any criminal offense with *89 respect to the tax for the taxable year 1942 or in which additions to the tax for such taxable year are applicable by reason of fraud." (Italics supplied.) Decision will be entered for the respondent.