*Decision will be entered for the petitioners.*

FLORENCE V. HABERSHAM-BEY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15924–79.     Filed March 2, 1982.

Florence V. Habersham-Bey, pro se.
*John F. Dean*, for the respondent.

CHABOT, *Judge*: Respondent determined deficiencies in Federal individual income tax and additions to tax under sections 6653(b)[1] (fraud) and 6654(a) (estimated tax) against petitioner as follows:

|  |  | Additions to tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6653(b) | Sec. 6654(a) |
| 1975 | $2,005.07 | $1,002.54 | $71.99 |
| 1976 | 1,813.00 | 906.50 | 69.40 |
| 1977 | 1,994.00 | 997.00 | 71.02 |

By amendment to answer, respondent asserts in the alternative that, if the Court determines that petitioner's underpayments were not due to fraud, then petitioner is liable for additions to tax under sections 6651(a) (failure to file return) and 6653(a) (negligence) as follows:

|  | Additions to tax | |
| --- | --- | --- |
| Year | Sec. 6651(a) | Sec. 6653(a) |
| 1975 | $501.27 | $100.25 |
| 1976 | 453.25 | 90.65 |
| 1977 | 498.50 | 99.70 |

The issues for decision are:

(1) Whether petitioner is exempt from the payment of Federal income tax;

(2) (a) Whether petitioner is liable for additions to tax under section 6653(b) (fraud), or (b) alternatively, if petitioner's underpayments are not due to fraud, whether petitioner is liable for additions to tax under sections 6651(a) (failure to file return) and 6653(a) (negligence);

(3) Whether petitioner is entitled to personal exemption deductions and credits on account of her two sons, head-of-household status, and the standard deduction (zero bracket amount for 1977); and

(4) Whether petitioner is liable for additions to tax under section 6654 (estimated tax).

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioner resided in Baltimore, Md.

Petitioner has been employed as a direct care hospital worker since 1967. During the years in issue, petitioner was employed by the State of Maryland as a direct care worker for the hospital and nursing service at Spring Grove Hospital Center. In that capacity, petitioner has received some training in matters relating to Spring Grove Hospital Center's psychiatric care, including training in psychiatry, sociology, medicine, surgery, nursing, mental retardation, the duties of a ward clerk, and filing. During the years in issue, petitioner earned wages, and Federal income tax was withheld from such wages, in the amounts shown in table I:

Table I

| Year | Wages | Tax withheld |
| --- | --- | --- |
| 1975 | $10,196.67 | $193.69 |
| 1976 | 9,743.95 | 0 |
| 1977 | 10,154.10 | 0 |

Throughout each of the years in issue, petitioner lived separately from her then-husband, Leonard J. Habersham (hereinafter sometimes referred to as Habersham). Petitioner and Habersham were divorced in 1978. Habersham itemized his deductions on his 1975, 1976, and 1977 Federal income tax returns.

Petitioner's two sons, Leonard Habersham-Bey (hereinafter sometimes referred to as Leonard, Jr.) and Clarence R. Reynolds-El (hereinafter sometimes referred to as Clarence), lived with petitioner throughout each of the years in issue. During the years in issue, Clarence was becoming a teenager and Leonard, Jr., was entering elementary school. On occasion, Leonard, Jr., stayed with Habersham for short visits which may have aggregated a few weeks each year. Petitioner received a total of $200 to $300 each year from Habersham for Leonard, Jr., and herself. Clarence received small amounts of money ($5 or $10) from his father once or twice a year.

For each of the years in issue, petitioner provided over half

the support for both Leonard, Jr., and Clarence, and furnished over half the cost of maintaining the household which was petitioner's home and the principal place of abode for Leonard, Jr., and Clarence.

In the notice of deficiency, respondent determined that petitioner had gross income from wages in the amounts shown in table I *supra*, and was entitled to one personal exemption for each year in issue. No itemized deductions or standard deductions were allowed for 1975 and 1976. Although it is not clear from the notice of deficiency, it does not appear that either itemized deductions or the zero bracket amount was allowed for 1977. Respondent computed petitioner's tax liability for each year based on the tax imposed by section 1(d) (married individuals filing separate returns).

Petitioner considers herself to be a "Moorish American," and rejects the terms "Negro," "African," and "Colored" as misnomers.

Since 1975, petitioner has been a member of the Moorish Science Temple.[2] One of the tenets of the Moorish Science Temple is that people of Moorish descent are not true American citizens and, therefore, are exempt from all taxation until the "executive will" of President Abraham Lincoln[3] and "the thirteenth amendment with 20 sections"[4] become a part

---

[2]On Sept. 25, 1975, the Moorish Science Temple was organized under Maryland law as a for-profit corporation. The record indicates that an organization entitled "the Moorish School of Law and History" was in existence before 1975. The record further indicates that the Moorish School of Law and History, Inc., No. 13, was incorporated on June 10, 1976, as a nonprofit educational institution and received a determination letter (dated July 15, 1977) from respondent classifying it as a tax-exempt organization under sec. 501(c)(3). These organizations seem to be related in purpose, philosophy, and membership.

Throughout these proceedings, petitioner apparently refers to these organizations interchangeably, and so we refer to these organizations collectively as the "Moorish Science Temple."

[3]The Moorish Science Temple relies on the following proclamations of President Lincoln:

Initial Emancipation Proclamation (Sept. 22, 1862)

Annual Address before Congress (Dec. 1, 1862)

Compensated Emancipation Proclamation (Dec. 15, 1862)

Supplemental Emancipation Proclamation (Jan. 1, 1863)

Oath of Amnesty and Reconstruction (Dec. 8, 1863)

[4]During the Senate's consideration of the joint resolution proposing the 13th Amendment to the Constitution of the United States, a motion was made by Senator Saulsbury to, in essence, substitute a provision with 20 sections for the proposed amendment; this motion was defeated on the same day it was made (Apr. 8, 1864). Cong. Globe, 38th Cong., 1st Sess.

of the United States Constitution and are implemented as such.[5]

In November 1974, a list of 22 Moorish Americans claiming to be exempt from Federal taxes was sent to respondent. Petitioner's name was not included in this list.

Before February 19, 1975, petitioner had submitted to her employer a Form W–4 on which she claimed three exemptions (for petitioner and her two sons). On February 19, 1975, petitioner prepared and submitted to her employer a Form W–4 on which she claimed 13 exemptions (for petitioner and 12 dependents).

When petitioner submitted the Form W–4 claiming 13 exemptions, petitioner knew that she was not entitled to 13 exemptions and she knew and intended that the effect of claiming 13 exemptions would be to stop the withholding of Federal income tax from her wages. There was no statement on the Form W–4 (or attached to it) explaining the 13 exemptions claimed thereon.

Although petitioner had filed a Federal income tax return for 1974, she did not file a Federal income tax return (or any document purporting to be an income tax return) with respondent for any of the years in issue.

---

1489–1490 (1864); Journal of the Senate 311–313 (Apr. 8, 1864). Reference to "the thirteenth amendment with 20 sections" by petitioner and the Moorish Science Temple relates to the provisions of the Saulsbury motion.

[5]Petitioner introduced into evidence a letter dated July 27, 1980, addressed "TO THE HONORABLE GOVERNORS, MAYORS AND CLERGICAL HEADS OF STATES" from the Moorish Science Temple, which contained the following:

"The only permanent solution to the 'RACE' problem in America is the complete implementation of Lincoln's Executive Will and the 13th Amendment with Twenty Sections of the Constitution as it was originally written and intended of the United States of America, the essence of which can be summarized as follows:

"1. COMPENSATION—the compensation of the descendants of slave-holders for their persons held as slaves (a sum presently estimated at $346 Billion) as well as the compensation of the Moors for their services rendered during their decades of servitude (a sum presently estimated at $2.16 Trillion).

"2. NATURALIZATION—the registration of ALL Moors into the Moorish National Bureau of Vital Statistics through which they MUST return their European names to the White American people; legally proclaim their True Free National Names, Race, Nationality and Religion (13th Amendment—Section I); and be officially declared citizens of the United States by the Federal Government.

"3. COLONIZATION—the colonization of Moors on their own land between the Alleghany and Rocky Mountains, which Lincoln called the 'EGYPT OF THE WEST.'

"4. AMNESTY AND RECONSTRUCTION—amnesty to ALL states then in rebellion against the Union and the inhabitants thereof (to be administered via the Oath of Amnesty [)] and reconstruction of the properties destroyed in times of the Civil War."

Both the false Form W–4 and the nonfiling of income tax returns were aimed toward the same end.

A part of petitioner's underpayment for each of the years in issue was due to fraud.

OPINION

As a preliminary matter, we note that respondent's determinations as to matters of fact in the notice of deficiency are presumed to be correct and petitioner has the burden of proving otherwise. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. However, respondent has the burden of proof with respect to the additions to tax for fraud and the additions to tax which were asserted in his amended answer.

## I. Exemption From Income Tax

Petitioner does not dispute that she received wages[6] in the amounts and during the years set forth in table I *supra*, but asserts that, as a Moorish American, she is exempt from the payment of Federal income tax until President Lincoln's "executive will" and "the thirteenth amendment with 20 sections" are enforced.[7] Respondent maintains that petitioner is not exempt from tax.

We agree with respondent.

Section 1 imposes an income tax on the taxable income of every individual who is a citizen or resident of the United States. Sec. 1.1–1(a)(1), Income Tax Regs. It cannot be seriously contended that the Congress lacks the power under the 16th Amendment to impose such an income tax without apportionment, or that the 16th Amendment is unconstitutional. *Brushaber v. United States*, 240 U.S. 1 (1916).

---

[6]Under sec. 61(a)(1), petitioner clearly is required to include these wages in gross income. It is well established that compensation for services, in whatever form received, is includable in gross income. *Commissioner v. Duberstein*, 363 U.S. 278 (1960); *Old Colony Tr. Co. v. Commissioner*, 279 U.S. 716 (1929).

[7]On answering brief, petitioner stated "that as a Moorish-American, she is liable for federal income tax, and that in seeking a just forum for her stated beliefs, withheld her taxes for the years: 1975, 1976, 1977." Nevertheless, petitioner maintains that no tax is due. Because of the equivocal nature of her statements on brief, as contrasted with her statements in the petition and at trial, we assume that petitioner has not conceded the issue of whether she is exempt from Federal income taxation.

Petitioner's other constitutional claims must also be rejected. On many occasions, this Court and others have rejected objections to the requirements of the Internal Revenue Code based on a taxpayer's religious and moral beliefs which oppose the policies of the Federal Government and its expenditures of funds. E.g., *Graves v. Commissioner*, 579 F.2d 392 (6th Cir. 1978), affg. a Memorandum Opinion of this Court;[8] *Greenberg v. Commissioner*, 73 T.C. 806, 810–811 (1980), and cases cited therein. Petitioner has given us no persuasive reason to depart from the analyses of these cases. Nor do we find any basis for concluding that Moorish Americans, as such, are exempt from Federal income tax.[9]

On this issue, we hold for respondent.

## II. Section 6653(b) Additions to Tax (Fraud)

Respondent determined that all or part of an underpayment in petitioner's income taxes for each of the years in issue was due to fraud. Respondent asserts in the alternative that, if for any year we do not find fraud, then petitioner is liable for additions to tax under sections 6651(a) (failure to file return) and 6653(a) (negligence) for that year. Petitioner denies that any underpayment in income tax for the years in issue was due to fraud or negligence.

We agree with respondent as to fraud for each of the years in issue.[10]

For each year in issue, petitioner has an underpayment[11]

---

[8]T.C. Memo. 1976–353.

[9]See *Walters v. Walters*, 474 F.2d 1349 (6th Cir. 1973, 31 AFTR 2d 73–968, 73–1 USTC par. 9396), affg. without published opinion an unreported District Court decision.

[10]In view of our conclusions as to fraud, we do not address respondent's alternative assertions.

[11]SEC. 6653. FAILURE TO PAY TAX.

(c) DEFINITION OF UNDERPAYMENT.—For purposes of this section, the term "underpayment" means—

(1) INCOME, ESTATE, GIFT, AND CERTAIN EXCISE TAXES.— In the case of a tax to which section 6211 (relating to income, estate, gift, and certain excise taxes) is applicable, a deficiency as defined in that section (except that, for this purpose, the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing) * * *

equal to her redetermined deficiency in income tax for that year.[12] In order to sustain his determination as to the fraud addition to tax[13] for a year, respondent must prove, by clear and convincing evidence, that some part of the underpayment for that year is due to fraud. Sec. 7454(a);[14] Rule 142(b), Tax Court Rules of Practice and Procedure; e.g., *Bond v. Commissioner*, 232 F.2d 822, 826 (4th Cir. 1956), affg. a Memorandum Opinion of this Court;[15] *Stone v. Commissioner*, 56 T.C. 213, 220 (1971); *Otsuki v. Commissioner*, 53 T.C. 96, 105 (1969). Respondent need not prove the precise amount of the underpayment that results from fraud, but only that some part of it is attributable to fraud. *Lee v. United States*, 466 F.2d 11, 16–17 (5th Cir. 1972); *Plunkett v. Commissioner*, 465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court;[16] *Otsuki v. Commissioner*, 53 T.C. at 105; *Estate of Brame v. Commissioner*, 25 T.C. 824, 831–832 (1956), affd. 256 F.2d 343 (5th Cir. 1958). The issue of fraud poses a factual question which is to be decided on an examination of all the evidence in the record. *Plunkett v. Commissioner, supra*; *Mensik v. Commissioner*, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); *Stone v. Commissioner*, 56 T.C. at 224; *Stratton v. Commissioner*, 54 T.C. 255, 284 (1970).

Fraud is an actual intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. E.g., *Webb v. Commissioner*, 394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court;[17] *Powell v.*

---

[12]In light of petitioner's stipulated compensation income (see table I *supra*), petitioner would have an underpayment of tax for each of the years in issue even if we were to agree with all of her contentions bearing on the amounts of her Federal income tax liabilities. See part III of this opinion, *infra*.

[13]SEC. 6653. FAILURE TO PAY TAX.

(b) Fraud.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *

[14]SEC. 7454. BURDEN OF PROOF IN FRAUD, FOUNDATION MANAGER, AND TRANSFEREE CASES.

(a) Fraud.—In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary.

This language reflects a 1976 amendment which does not affect the instant case.

[15]T.C. Memo. 1955–144.

[16]T.C. Memo. 1970–274.

[17]T.C. Memo. 1966–81.

*Granquist*, 252 F.2d 56, 60 (9th Cir. 1958); *Wiseley v. Commissioner*, 185 F.2d 263, 266 (6th Cir. 1950), revg. 13 T.C. 253 (1949); *Estate of Pittard v. Commissioner*, 69 T.C. 391, 400 (1977); *McGee v. Commissioner*, 61 T.C. 249, 256–257 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). This intent may be inferred from circumstantial evidence. *Powell v. Granquist*, 252 F.2d at 61; *Gajewski v. Commissioner*, 67 T.C. 181, 200 (1976); *Beaver v. Commissioner*, 55 T.C. 85, 92–93 (1970).

Viewing the record as a whole, we conclude that respondent has sustained his burden of showing fraud by clear and convincing evidence for each of the years at issue.

We must not find fraud on the basis of petitioner's failure to meet her burden of proving error in the determination of the deficiencies. E.g., *Otsuki v. Commissioner*, 53 T.C. at 106; *Nicholson v. Commissioner*, 32 B.T.A. 977, 989 (1935), affd. 90 F.2d 978 (8th Cir. 1937). See *Estate of Beck v. Commissioner*, 56 T.C. 297, 363 (1971). Our finding of fraud is not based on any such failure of proof. (See note 12 *supra*.) Instead, we believe the following factors point toward a fraudulent intent by petitioner:

(1) Although petitioner filed an income tax return for 1974, she did not file an income tax return with respondent for any of the years in issue. Petitioner made no effort to disclose her income for these years and her alleged tax-exempt status to respondent.[18] Cf. *Muste v. Commissioner*, 35 T.C. 913, 920–921 (1961). We are convinced that petitioner, an intelligent individual continuously employed in a responsible job, understood her obligation under the tax statutes to report her income and file income tax returns, but deliberately chose not to do so. While failure to file tax returns does not in itself establish fraud, such failure may properly be considered in connection with other facts in determining whether an underpayment of tax is due to fraud. *Grosshandler v. Commissioner*, 75 T.C. 1, 19 (1980), on appeal (7th Cir., Dec. 22, 1981), and cases cited therein.

---

[18]Although a list of Moorish Americans claiming to be exempt from Federal taxation was sent to respondent in November 1974, petitioner's name was not included in this list. At most, the record indicates that petitioner's name may have been "on record" at the Moorish Science Temple; the record is completely devoid of evidence indicating that any correspondence or communication transpired between petitioner and respondent during the years in issue.

(2) Petitioner did not pay any Federal income taxes for the years in issue (except for the $193.69 withheld from petitioner's wages in early 1975).[19] Furthermore, petitioner took affirmative steps to avoid her liability to have such taxes paid by withholding. On February 19, 1975, petitioner submitted to her employer a Form W–4 on which she claimed 13 exemptions. There was no statement on the Form W–4 (or attached to it) explaining the 13 exemptions claimed thereon. Such a bare assertion of 13 exemptions would not serve to give respondent notice as to petitioner's alleged tax-exempt status. *Shea v. United States*, 506 F.2d 1226 (4th Cir. 1974); *Malinowski v. United States*, 472 F.2d 850 (3d Cir. 1973). At the time petitioner submitted the Form W–4 to her employer, petitioner knew she was not entitled to claim at least 10 of the 13 exemptions. She submitted the false Form W–4 in order to stop altogether the withholding of Federal income taxes from her wages. When combined with petitioner's failure to file returns, her false Form W–4 to eliminate withholding is indicative of an intent to evade the payment of income taxes.

(3) We do not believe that petitioner could have honestly believed that membership in the Moorish Science Temple somehow exempted her from Federal income taxation. Furthermore, we do not believe petitioner's assertion that her actions were taken, not to defraud the Government, but to create a legal proceeding to litigate her claims against the United States (i.e., naturalization, colonization (see note 5 *supra*), and compensation of Moorish Americans). We reject her argument that in so doing she "followed a perfectly legal recourse in finding a 'JUST FORUM' for her claims." Petitioner's actions are far from "a perfectly legal recourse." Petitioner had a legal obligation to file Federal income tax returns for each of the years in issue, to report her income on such returns, and to pay income taxes. Petitioner had a legal obligation to file truthful Forms W–4. Petitioner had a legal obligation to file estimated tax returns and pay estimated taxes if her income tax withholding fell too far below her actual income tax liabilities. Disclosure which was truthful,

---

[19]Respondent prematurely assessed and levied on petitioner's wages for collection of these taxes (sec. 6213(a)); such amounts as were thus collected by respondent were returned to petitioner before the trial in the instant case.

timely, and full might indicate an intention to present a test case. The record of the instant case shows concealment and untruthfulness, combined with no payment—indicia of fraud. We do not believe petitioner's actions—avoidance of withholding on wages, failure to file income tax returns, and failure to pay tax—were done to create a legal test of Moorish American rights. Instead, we are convinced that these actions were done to permanently deprive the Government of income taxes known to be due and owing. Cf. *Muste v. Commissioner*, 35 T.C. at 921.

We conclude that petitioner knew what she was doing—i.e., that petitioner was evading the payment of her Federal income tax liability (*United States v. Pomponio*, 429 U.S. 10, 12 (1976)); petitioner's fraud has been shown by clear and convincing evidence for each of the years in issue.

On this issue, we hold for respondent.

### III. Amounts of Deficiencies

Petitioner claims personal exemption deductions and credits on account of her two sons, head-of-household status, and the standard deduction (zero bracket amount for 1977) for each of the years in issue. Respondent determined that petitioner is not entitled to dependency exemption deductions or credits, that she is taxable as a married person filing separately, that she is not entitled to use the standard deduction (or zero bracket amount), and that she is not entitled to any itemized deductions.

We agree with petitioner.

### A. Personal Exemptions, Deductions, and Credits

With exceptions not relevant here, section 151[20] permits an

---

[20]Sec. 151, in relevant part, reads as follows:

SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.

(a) ALLOWANCE OF DEDUCTIONS.—In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income.

\*        \*        \*        \*        \*        \*        \*

(e) ADDITIONAL EXEMPTION FOR DEPENDENTS.—

(1) IN GENERAL.—An exemption of $750 for each dependent (as defined in section 152)—

\*        \*        \*        \*        \*        \*        \*

(B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student.

individual to deduct an exemption of $750 for each dependent child of the taxpayer who has not attained the age of 19 at the close of the calendar year. Section 152(a)[21] defines "dependent" to include a child over half of whose support for the calendar year was received from the taxpayer. In view of our finding that petitioner provided over half the support of her two sons for each of the years in issue (see findings of fact, *supra*), we conclude petitioner is entitled to deduct exemptions for two dependents for each such year.[22]

## B. Head-of-Household Status

Section 1(b) provides more favorable income tax rates for heads of households than are available for married people who do not file joint tax returns. Section 2(b),[23] in relevant part,

---

*      *      *      *      *      *      *

(3) CHILD DEFINED.—For purposes of paragraph (1)(B), the term "child" means an individual who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer.

The subsequent amendments of sec. 151(e) (by sec. 102(a) of the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763, 2771, and by sec. 104(c) of the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 172, 189) do not affect the instant case.

[21]SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer):

(1) A son or daughter of the taxpayer, or a descendant of either,

[22]The amount of the general tax credit for each year in issue is to be computed by taking into account this conclusion as to dependency exemptions. See secs. 42(a), 42(c).

[23]SEC. 2. DEFINITIONS AND SPECIAL RULES.

(b) DEFINITION OF HEAD OF HOUSEHOLD.—

(1) IN GENERAL.—For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in subsection (a)), and either—

(A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of—

(i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

(ii) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

(B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151.

For purposes of this paragraph, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual.

(2) DETERMINATION OF STATUS.—For purposes of this subsection—

defines "head of household" as an individual not married at the close of the taxable year who furnishes over half the cost of maintaining a household which is the taxpayer's home and the principal place of abode of an unmarried child of the taxpayer. We have found that, for each of the years in issue, petitioner furnished over half the cost of maintaining a household which was her home and the principal place of abode for her two sons. What remains is for us to determine whether petitioner (a married individual not legally separated from her husband under a decree of divorce or separate maintenance) is to be treated, for purposes of the head-of-household provisions, as married at the close of each of the years in issue.

Section 2(c) provides as follows:

(c) CERTAIN MARRIED INDIVIDUALS LIVING APART.— For purposes of this part, an individual who, under section 143(b), is not to be considered as married shall not be considered as married.[24]

Our inquiry, then, turns to section 143(b).

Section 143(b)[25] provides that a married taxpayer who files a separate return will not be considered as married if the

---

(A) a legally adopted child of a person shall be considered a child of such person by blood;

(B) an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married;

(C) a taxpayer shall be considered as not married at the close of his taxable year if at any time during the taxable year his spouse is a non-resident alien; and

(D) a taxpayer shall be considered as married at the close of his taxable year if his spouse (other than a spouse described in subparagraph (C)) died during the taxable year.

[24]This provision was amended by sec. 1901(a)(1) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, 1764. The revised language, which applies only to the last of the 3 years before the Court, provides the same rule as the language in the text.

[25]SEC. 143. DETERMINATION OF MARITAL STATUS.

(b) CERTAIN MARRIED INDIVIDUALS LIVING APART.—For purposes of this part, if—

(1) an individual who is married (within the meaning of subsection (a)) and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a dependent (A) who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the individual, and (B) with respect to whom such individual is entitled to a deduction for the taxable year under section 151,

(2) such individual furnishes over half of the cost of maintaining such household during the taxable year, and

(3) during the entire taxable year such individual's spouse is not a member of such household,

such individual shall not be considered as married.

The subsequent amendments of this provision (by sec. 1901(a)(22) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, 1767, and sec. 101(d)(4) of tit. I of the Tax Reduction and Simplification Act of 1977, Pub. L. 95–30, 91 Stat. 127, 133) do not affect the instant case.

taxpayer furnishes over half the cost of maintaining a household which is the taxpayer's home and which, for more than one-half of the taxable year, is the principal place of abode of a dependent child of the taxpayer for whom the taxpayer is entitled to a personal exemption deduction. Also, the taxpayer's spouse must not be a member of the household during the entire year.

Throughout the years in issue, petitioner lived separately from Habersham. We have already determined that petitioner has satisfied the requirements as to household and dependents.

The question remaining is whether petitioner satisfies the section 143(b)(1) requirement that she be "an individual * * * who files a separate return."

We read the separate return language of section 143(b) as a requirement that the taxpayer be treated as filing separately for income tax purposes because a joint return was not filed with the taxpayer's spouse, rather than as a strict requirement that the taxpayer in fact file a separate return.

Section 143(b) was enacted by section 802(b) of the Tax Reform Act of 1969 (Pub. L. 91–172, 83 Stat. 487, 677) as a relief provision in connection with the low income allowance.[26] Many provisions of the tax laws have the effect of inducing married people to file joint returns, by increasing their tax rates or taxable income, or by decreasing their tax credits, if they do not file joint returns. Section 143(b) was intended to mitigate the harsh impact of such provisions in the so-called abandoned family situation. In describing section 143(b), the Senate Finance Committee Report on the Tax Reform Act of 1969 stated (S. Rept. 91–552, at 259 (1969), 1969–3 C.B. 423, 587) as follows:

> Both versions of the bill provide that married couples filing separate returns in 1970 and 1971 generally are not to have the benefit of the additional allowance provided by the bill. However, to provide for the case of a family abandoned by one of the parents, both versions of the bill specify that a married individual, under certain conditions, may obtain the full low income allowance even though not filing a joint return. In addition, such an individual when electing the percentage standard deduction may deduct an

---

[26]Tit. I of the Tax Reduction and Simplification Act of 1977, Pub. L. 95–30, 91 Stat. 127, repealed the low income allowance (sec. 141) after 1976.

amount up to the full ceiling rather than only up the ceiling provided for married individuals filing separately and (if he or she otherwise qualifies for head of household status) may also use the tax rates for head of household. *These conditions require that the individual must not file a joint return,* but must maintain a household which is the principal place of abode of one or more dependents. The dependent in question must be a son or daughter (or step-son or step-daughter) for which the individual is entitled to a dependency exemption. The individual must furnish more than half the cost of maintaining the household and during the entire taxable year the individual's spouse must not be a member of the household in question. [Emphasis supplied; fn. ref. omitted.]

Cf. H. Rept. 91–413 (Part 1) 207 (1969), 1969–3 C.B. 200, 330; H. Rept. 91–413 (Part 2, Supp.) 138–139 (1969), 1969–3 C.B. 420–421. Similarly, Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1969, at 219, characterized the requirements of section 143(b), as follows:

Married couples filing separate returns for 1970 and 1971 are limited to a minimum standard deduction of $100 plus $100 per exemption with a $500 limit and do not receive the additional allowance. For 1972 and thereafter, they each are limited to a $500 minimum standard deduction or one-half the minimum available to those filing a joint return. However, to make provision for a family abandoned by one of the parents, the Act provides that a married individual, under certain conditions, may obtain the full low-income allowance even though not filing a joint return. To receive this treatment *the individual must not file a joint return,* but must maintain a household which is the principal place of abode of one or more dependents for more than one-half of the taxable year. The dependent in question must be a son or daughter (or step-son or step-daughter) for which the individual is entitled to a dependency exemption. In addition, the individual must furnish more than half the cost of maintaining the household and during the entire taxable year the individual's spouse must not be a member of the household in question. [Emphasis supplied; fn. ref. omitted.]

At the very least, this legislative history indicates congressional recognition that section 143(b) proscribes the filing of a joint return by a taxpayer seeking the application of that section. Whether the Congress contemplated the application of section 143(b) when no return is filed is not disclosed in its legislative history. Although it is not free from doubt, we perceive the critical inquiry to be whether a joint return was filed, thereby eliminating the need for relief under section 143(b), rather than an inquiry into whether or not a return has in fact been filed. Since respondent's regulations (sec. 1.143–1(b), Income Tax Regs.) do no more than track the statutory language, we accord them a similar interpretation.

This interpretation of section 143(b) is particularly compelling in the instant case because petitioner is precluded from filing a joint return under section 6013(b)(2)(C)[27] upon the timely filing of a petition with this Court. Thus, for each of the years in issue petitioner is locked out of joint return status.

In view of the foregoing, we conclude that section 143(b) applies to a married individual who may not have actually filed a separate return but is treated as filing separately by virtue of not filing a joint return with his or her spouse. We further conclude that petitioner has satisfied all of the requirements of section 143(b) and, accordingly, is considered as not married for each of the years in issue. It follows, therefore, that petitioner, having furnished over half the cost of maintaining the household which was her home and the principal place of abode for her two sons, was a head of household for each of the years in issue and is entitled to use the tax rate schedule of section 1(b) for each of these years.

## C. Standard Deductions and Zero Bracket Amount

Since we hold that petitioner is entitled to be treated as not married under section 143(b), it follows that sections 141(d) and 142(a) do not prohibit petitioner from using the standard deduction provided by section 141 for 1975 and 1976; also section 63(e)(1)(A) does not require petitioner to increase her adjusted gross income by any unused zero bracket amount, under section 63(b)(2), for 1977.

On this issue, we hold for petitioner.

## IV. Section 6654 Additions to Tax (Estimated Tax)

Petitioner has the burden of proving error in respondent's determination that additions to tax should be imposed under

---

[27]SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(b) JOINT RETURN AFTER FILING SEPARATE RETURN.—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(2) LIMITATIONS FOR MAKING OF ELECTION.—The election provided for in paragraph (1) may not be made—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(C) After there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213; * * *

section 6654(a).[28] *Hollman v. Commissioner,* 38 T.C. 251, 263 (1962). Petitioner has failed to introduce any evidence indicating that respondent so erred.

We conclude that petitioner is liable for additions to tax under section 6654(a).

On this issue, we hold for respondent.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[28]SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX.

(a) ADDITION TO THE TAX.—In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 * * * for the taxable year an amount determined at an annual rate established under section 6621 upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)).