GERALD AND CLYDIE J. SAVOIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Savoie v. Commissioner
Docket No. 6241-82.
United States Tax Court
T.C. Memo 1983-204; 1983 Tax Ct. Memo LEXIS 586; 45 T.C.M. (CCH) 1322; T.C.M. (RIA) 83204; April 12, 1983. *586 Held: P's motion for leave to file reply out of time is denied. Held further: R's motion for summary judgment as to deficiencies and additions to the tax, based on facts deemed admitted under Rule 37(c), is granted. Garald Savoie, pro se. David W. Johnson, for the respondent. WHITAKER
MEMORANDUM OPINION WHITAKER, Judge: This case is before the Court on respondent's motion for summary judgment, filed November 3, 1982, and petitioners' motion to file reply out of time, filed January 17, 1983. A hearing on these motions was held on January 24, 1983. Respondent determined separate deficiencies against each petitioner in the following amounts: Gerald Savoie--
Addition to Tax
Year
Deficiency
Sec. 6653 (b) [1]
1978
$1,644
$822
1979
1,487
744
1980
1,247
624
*587 Clydie J. Savoie--
Additions to Tax
Year
Deficiency
Sec. 6651 (a)
Sec. 6653 (a)
1978
$1,644
$127
$82
1979
1,487
372
74
1980
1,247
312
62
These deficiencies are primarily attributable to respondent's determination that Firestone Synthetic Rubber & Latex Company (hereinafter Firestone) paid Mr. Savoie wages of $20,456 in 1978, $20,902 in 1979, and $18,940 in 1980. Under the community property law of Louisiana, respondent attributed half of Mr. Savoie's wages to his wife during each of the years in issue. For 1978 respondent determined that petitioners also received $583 as community income from Orange Rice Milling Company. However, by way of amendment to the motion for summary judgment, filed January 24, 1983, respondent now concedes that this additional $583 was not paid to petitioners. In their joint petition, [2] petitioners state they are husband and wife residing in Sulphur, Louisiana. The petition alleges as error respondent's determinations *588 that (1) Mr. Savoie received income from Firestone and Orange Rice Milling Company; (2) petitioners were subject to Louisiana community property laws for purposes of determining Federal income tax liabilities; (3) petitioners were not eligible for applicable deductions, exemptions, etc.; (4) petitioners failed to file income tax returns for the years in issue; (5) petitioners should be treated as filing separate returns for each of the years, with each petitioner entitled to only one exemption; and (6) Mr. Savoie was subject to the fraud addition to the tax and Mrs. Savoie was subject to the delinquency and negligence additions to the tax. In addition to these general allegations of error, petitioners made various assignments of error on constitutional grounds, i.e., that income taxes are barred by the Sixteenth Amendment, that petitioners are being penalized without due process of law under the Fifth and Fourteenth Amendments, that they were not required to file returns supplying potentially incriminating information, that they should not bear the burden of proof because they have not been granted immunity, and that they are not before a common law or equity court as provided by *589 the Constitution. As the facts upon which they relied, petitioners simply alleged that "[i]ncome was less than alleged by the Commissioner" and "[e]xpenses and deductions were more than allowed by the Commissioner," and also repeated their constitutional arguments and stated vague facts relating to these arguments rather than to the deficiencies or additions to tax involved in this case. Paragraph 7 of respondent's answer set forth affirmative allegations to support his determination that the deficiencies for 1978, 1979 and 1980 with respect to Mr. Savoie were due in whole or in part to fraud. A motion to strike the answer was filed by petitioners on June 30, 1982, and denied by the Court on July 1, 1982. Petitioners failed to file a reply within the 45-day period prescribed in Rule 37(a). On July 30, 1982, respondent moved under Rule 37(c) for an order of the Court deeming admitted the undenied affirmative allegations. Notice was served on petitioners by the Clerk of *590 the Court, stating that the motion was calendared for hearing in Washington, D.C., on September 1, 1982. The notice specifically advised petitioners that respondent's motion would be denied if petitioners filed a proper reply on or before August 17, 1982. However, petitioners filed no reply and did not attend the scheduled hearing or submit any argument in opposition to the motion. On September 1, 1982, the Court granted respondent's motion. On November 3, 1982, respondent filed his motion for summary judgment. Filed with the motion was an affidavit of Linda K. West, the attorney of responent who had custody and control of the administrative file relating to this case. The affidavit was accompanied by copies of Forms 1040 for 1978, 1979 and 1980, which Mr. Savoie had submitted to respondent. The Forms 1040 were protest-type forms, with virtually all entries relating to the amount of income or tax liability filled in with the word "object" or simply left blank. Attached to each of these Forms 1040 were several pages of materials dealing generally with the privilege against self-incrimination. The affidavit of respondent's attorney also transmitted a copy of a letter from Firestone *591 to respondent listing the earnings of Mr. Savoie as $20,456.33 for 1978, $20,901.50 for 1979, and $18,940.34 for 1980. The letter stated that $2,270.24 of Federal tax had been withheld in 1978, but that no Federal tax had been withheld in 1979 and 1980. Attached to the Firestone letter were copies of Forms W-4 filed by Mr. Savoie in 1978, 1979 and 1980. Petitioners' objections to respondent's motion for summary judgment, filed on January 17, 1983, stated no factual basis for opposing the motion. The objections stated that petitioners had filed Fifth Amendment returns for all the years in question and cited a Court of Appeals' opinion in support of their legal argument that the filing of the Fifth Amendment returns protected them from the assessment of the additions to tax. With the objections, petitioners filed a motion to file reply out of time, as well as a proposed reply. If we permit the proposed reply to be filed, we will have to vacate the Rule 37(c) order we granted on September 1, 1982. Petitioners argue that leave to file a reply even at this late date should be granted by the Court because they believed their motion to strike, filed June 30, 1982, and denied on July 1, 1982, was *592 sufficient as a reply. However, the Clerk's notice of the calendaring of the September 1, 1982, hearing on respondent's Rule 37(c) motion was served on petitioners on July 30, 1982, almost one month after denial of the motion to strike. It is apparent that petitioners knew their motion to strike did not satisfy their duty to respond to respondent's Rule 37(c) motion. Petitioners state that after the Court advised them that timely reply was required they could not find the time to think about it because Mr. Savoie had recently lost his employment. This appears to be no more than a make-weight excuse, particularly in view of the perfunctory nature of the reply petitioners now wish to file and their persistent reliance throughout this litigation on "constitutional" arguments rather than arguments on the merits of the adjustments. Petitioners state that they could not attend the hearing scheduled on September 1, 1982, because of the expense of traveling to Washington, D.C. However, the Clerk's notice of the hearing called attention to Rule 50(c) with respect to personal appearance. Rule 50(c) states that a party may submit a written statement of this position in lieu of attendance *593 at the hearing. Petitioners do not state that they misunderstood this provision. Petitioners have given us no credible explanation for their failure to reply or otherwise respond to respondent's Rule 37(c) motion. Particularly in the light of petitioners' persistent refusal to focus on the facts of their particular case but to rely instead on patently frivolous constitutional arguments, we cannot help but conclude that petitioners purposefully refused to file a reply denying the affirmative allegations of fraud. They had their day in court on the Rule 37(c) motion but knowingly chose not to present any arguments to the Court. We hold that petitioners have failed to show good and sufficient cause to justify vacating the order of September 1, 1982. Thus, we continue to view the allegations advanced by respondent in paragraph 7 of the amended answer as having been deemed admitted. Under Rule 121, summary judgment is appropriated if their is no genuine issue as to any material fact. On the issue of fraud with respect to Mr. Savoie, the burden of proof is on respondent; otherwise petitioner bears the burden of proof. Rule 142. Because of the deemed admissions and the exhibits *594 submitted in support of the motion for summary judgment, there is no factual question before the Court concerning the income received by petitioners in the years in issue. The deemed admissions establish that Mr. Savoie was paid wages by Firestone in the amounts of $20,456 for 1978, $20,902 for 1979, and $18,940 for 1980. The letter from Firestone that was attached to the affidavit in support of the motion for summary judgment confirms these amounts. Petitioner has alleged no contrary facts. The deemed admissions also specifically establish that the amount of income tax due and payable from Mr. Savoie was $1,644 for 1978, $1,487 for 1979, and $1,247 for 1980. Respondent has since conceded, however, that the 1978 deficiency was only $1,564 for 1978 since he has accepted that petitioners did not receive payments from Orange Rice Milling Company in that year. Also established by the deemed admissions is the fact that petitioners did not file Federal income tax returns for 1978, 1979 and 1980. Ms. West's affidavit confirms this fact. The Forms 1040 filed by Mr. Savoie did not constitute valid returns because they did not contain sufficient information from which the tax could be *595 computed. United States v. Porth,426 F.2d 519, 523 (10th Cir. 1970); Jarvis v. Commissioner,78 T.C. 646, 653-655 (1982). On the basis of these facts, the amounts of deficiencies are conclusively established. It is also clear that there is no factual dispute concerning the application of the section 6651(a) additions to the tax against Mrs. Savoie. The deemed admissions and Ms. West's affidavit, which has not been controverted by petitioners, establish that Mrs. Savoie filed no returns for the years in issue. Petitioners have advanced no grounds that might constitute reasonable cause for the nonfiling, so the delinquency addition is clearly justified. Petitioners have also advanced no facts that might tend to show the underpayments of Mrs. Savoie were not due to negligence; thus, there is no factual dispute concerning her liability for the section 6653(a) additions to the tax for negligence. As to the additions to the tax for fraud against Mr. Savoid, it is likewise clear there is no factual dispute. As discussed above, it is conclusively established that Mr. Savoie failed to file returns for the years in issue and that he is liable for *596 substantial deficiencies in each of these years. Although the nonfiling of returns does not in itself establish fraud, it may be considered in conjunction with other facts in determining whether an underpayment is due to fraud. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). Here, the deemed admissions specifically establish that fraudulent affirmative steps were taken to stop income tax from being collected. Mr. Savoie submitted Forms W-4 to his employer to stop withholding Federal income tax from October 1978 through 1980; he knew the Forms W-4 were false when he submitted them; and his submission of the false Forms W-4 was fraudulent with intent to evade tax. Moreover, it has been deemed admitted that Mr. Savoie's "failure to file federal income tax returns and to report thereon his correct taxable income for each of the years 1978, 1979 and 1980 was due to fraud with intent to evade tax." Considered together, these deemed admitted facts conclusively establish that Mr. Savoie's underpayment of tax in each of the years 1978, 1979 and 1980 was due to fraud. Because there is no genuine dispute as to any of the material facts relating to the deficiencies or *597 additions to the tax, the case is ripe for summary judgment. Most of the legal arguments advanced by petitioners are patently frivolous constitutional arguments, which have been rejected by this Court in scores of cases. [3] The only non-constitutional arguments are that amounts received by Mr. Savoie should not be taxed under community property laws and that petitioners should be treated as filing joint returns. However, it is well established that the community property laws of Louisiana required Mr. Savoie's wages from Firestone to be attributed one-half to each spouse. See United States v. Mitchell,403 U.S. 190 (1971). [4] It is likewise clear that respondent was entitled to tax petitioners as married individuals filing separate returns since they never submitted any joint returns. Durovic v. Commissioner,487 F.2d 36 (7th Cir. 1973), affg. on this point 54 T.C. 1364 (1970). Because petitioners' legal arguments are devoid of merit, we grant respondent's motion for summary judgment. *598 Although we have refused to allow petitioners to file a reply out of time and have based our decision upon the allegations deemed admitted under Rule 37(c), we note that even if we had permitted the filing of the proposed reply, respondent would still have been entitled to summary judgment. Under Rule 121(d), the party opposing a motion for summary judgment has an affirmative duty to state facts which, if proved, would entitle him to relief. Rule 121(d) provides specifically: When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, a decision, if appropriate, may be entered against him. Although the proposed reply would have denied several (but not all) of respondent's affirmative allegations, it would not have placed before the Court any facts in support of petitioners' claim that respondent's determinations were erroneous. Nor have petitioners presented any facts in any of their other submissions. *599 The petition and petitioners' other submissions indicate that they do not quarrel with respondent's factual determinations, but only with the legal import of those facts. Mr. Savoie's statements at the hearing on the summary judgment motion bear out this impression. He specifically stated for the record that he would not proceed to present facts to dispute respondent's findings, ostensibly because of the absence of a grant of immunity. He persisted in this refusal despite the Court's advice that it had no authority to grant immunity and that no reasonable risk had been brought to its attention of any possible criminal prosecution of petitioners relating to the tax deficiencies in issue. At the hearing, petitioners submitted three motions, which, like their previous submissions, were based on "constitutional" arguments but did not address the particular facts of their case. [5] This complete failure to present facts to controvert respondent's allegations is in itself sufficient to entitle respondent to summary judgment. [6]
*600 The facts left undenied by the proposed reply would have been sufficient to have enabled respondent to have carried his burden of proving fraud by clear and convincing evidence. Even if the proposed reply had been accepted, petitioners would still have admitted the receipt of wages from Firestone in the amounts determined by respondent. They would not have denied that they have filed a return for 1977 reporting gross income of $19,410 and an income tax liability of $2,053. Nor would they have denied that the Forms W-4 filed by Mr. Savoie caused Firestone to stop withholding Federal tax from October 1978 through 1980. In signing a Form W-4, a taxpayer must certify that he incurred no liability for Federal income tax for the year the form is submitted and for the preceding year. When he submitted the first of these Forms W-4 in October 1978, Mr. Savoie knew that he had incurred an income tax liability for 1977, as evidenced by the return he filed for that year. Other than his frivolous protester-type arguments, there are no allegations to indicate that he had any basis for believing he would not have an income tax liability for any of the years in issue. The filing of false *601 Forms W-4 combined with the failure to file returns is strong evidence of fraud. See, e.g., Habersham-Bey v. Commissioner,78 T.C. 304 (1982). Accordingly, respondent's motion for summary judgment will be granted. An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The petition we refer to in this opinion is the amended petition, filed April 27, 1982. Similarly, our references to respondent's answer are to his answer to amended petition, filed June 7, 1982.↩
3. See, e.g., the cases cited in note 3 of Grilliot v. Commissioner,T.C. Memo. 1981-100↩. 4. See also Ammen v. Commissioner,T.C. Memo. 1982-477↩.
5. One motion sought dismissal because of the failure to grant immunity; another motion requested this Court to declare itself unconstitutional and to transfer the case to the U.S. District Court; and the third motion asked for dismissal on the ground that Mr. Savoie's "only income during the years in question was wages" and that wages are not subject to income tax. After due consideration, we denied these three motions on the day of the hearing. Notice of denial was properly served on petitioners. ↩
6. See, e.g., Pebley v. Commissioner,T.C. Memo. 1981-701, affd.     F.2d     (9th Cir., Feb. 22, 1983); Raemer v. Commissioner,T.C. Memo. 1981-138; Grilliot v. Commissioner,supra.↩