THOMAS J. CHANDLER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chandler v. Commissioner
Docket No. 30960-87
United States Tax Court
T.C. Memo 1990-421; 1990 Tax Ct. Memo LEXIS 438; 60 T.C.M. (CCH) 448; T.C.M. (RIA) 90421; August 7, 1990, Filed *438 Decision will be entered under Rule 155. Robert M. Musselman, for the petitioner. William L. Ringuette, for the respondent. RAUM, Judge. RAUM
MEMORANDUM OPINION The Commissioner determined deficiencies and additions to tax against Thomas J. Chandler, Jr. (petitioner) for the calendar years 1979 through 1982 in the following amounts: Year
Deficiency
6653(b) [1]
6653(b)(1) [2]
6653(b)(2) [3]
6654
1979
$  2,253.40
$  7,185.78
-0-
-0-
$   506.45
1980
1,935.60
14,451.55
-0-
-0-
1,718.20
1981
10,708.21
24,331.66
-0-
-0-
2,908.29
1982
20,096.78
-0-   $ 25,466.07
*
2,949.52
$ 34,993.99
$ 45,968.99
$ 25,466.07
$ 8,082.46
*439 Year
6661
1979
-0-
1980
-0-
1981
-0-
1982
$ 5,024.20
$ 5,024.20
By amendment to answer, the Government claims in the alternative that, if the Court finds that petitioner's underpayments were not due to fraud (section 6653(b)), then petitioner is liable for additions to tax under sections 6651(a)(1) (failure to file return) and 6653(a) (negligence). Due to concessions, *440 the sole issue left for decision is whether petitioner is liable for the additions to tax in respect of fraud under section 6653(b). The parties agree that if we find that petitioner's underpayments were not due to fraud, then petitioner is liable for the additions to tax pursuant to sections 6651(a)(1) and 6653(a) claimed in the alternative by the Commissioner in his amendment to answer. The case was submitted fully stipulated under our Rule 122. Among the stipulated exhibits are extensive transcripts of petitioner's testimony before IRS special agents. We are of course free to make findings of fact based on such testimony and other exhibits, but for convenience such findings appear in the opinion rather than in a separate statement of findings of fact. When the petition in this case was filed, petitioner resided in Roanoke, Virginia. Petitioner is a college graduate. He entered the University of Virginia in 1950, but was drafted for military service not long thereafter. Upon coming out of the Army in 1955, he reentered college under the so-called GI bill of rights, and was awarded the degree of B.S. in Commerce in 1958. At college he majored in accounting, and he took *441 a course in taxation. The last income tax return filed by him prior to the delinquent returns for the tax years 1979-1982, hereinafter more fully discussed, was in 1956, the year after he was discharged from the Army. While still at college, he did not have any income to report. As to the years thereafter (prior to 1979) the record is murky. It would appear that he had some reportable income for at least some of those years, but we have very little clue as to which specific years, except possibly 1977 and 1978. During the years in question, petitioner listed his occupation as a business consultant. His primary source of income during these years was from management and consultant fees, a substantial portion of which related to his services as a trustee and/or examiner for the United States Bankruptcy Court for the Western District of Virginia. His activities as a business consultant together with his activities relating to his services in respect of entities or persons in financial difficulty or in bankruptcy accounted for about 95 percent of his time. He was also a real estate broker and had some earnings from his activities as such. In connection with his real estate sales *442 efforts, petitioner was involved during the tax years with Trans-Southern Realty and Mortgage Corporation, a corporation concerned with the sale and management of real estate. It was incorporated in 1976 but was inactive until 1983. Petitioner received no income from that corporation during the taxable years. However, he filed its corporate income tax returns (Forms 1120) annually since its incorporation; he filed its delinquent 1982 return on July 11, 1983. Petitioner's first face-to-face contact with a revenue officer of the IRS occurred on March 9, 1984; they met again on March 23, 1984. Their discussions related to the taxable years 1979-1982 and petitioner's failure to file returns for those years. The case was then referred to the Criminal Investigation Division of the IRS. Petitioner was then contacted by a special agent, and met (together with his attorney, Robert M. Musselman) from time to time with IRS special agents. At such meetings, he gave extensive testimony after being informed of his constitutional rights. Recorded taped copies of that testimony are part of the stipulated record herein. Peitioner was questioned at length about his failure to file returns *443 and about his income, deductions, personal history, and related matters. He was fully cooperative with the special agents, as he had been with the revenue officer who previously interrogated him. Petitioner freely admitted that he was aware of his obligation to file income tax returns. He testified that he had complete records relating to his income-producing activities, including bank statements, canceled checks, check stubs, etc. He unhesitatingly offered to make them available to the IRS, and they were in fact made available during the period covered by the investigation. He frankly admitted that he had no reason for failure to file, except as it grew out of, and was related to, alcoholism. Alcoholism was a major factor in petitioner's failure to file income tax returns over the years. The history of petitioner's alcoholism is dismal with almost tragic overtones. He was "an active alcoholic from the time [he] was in high school, right on through. It got progressively worse." He was in a "steady slide downhill." He was drunk "all day long," and would pass out. He was arrested three times, about 1960, 1963, and 1973, for "driving under the influence." He was hospitalized *444 a number of times for his alcoholism. His last hospitalization was in 1973 or 1974 for a period of 46 days. He was treated by a psychiatrist with whom he lived. Petitioner was experiencing severe blackouts up until the time of his final hospitalization. Notwithstanding his alcoholism and blackouts, he would appear to function rather normally but without any recollection of what had happened. He stopped drinking at the time of his last hospitalization. However, after achieving sobriety the adverse effects of his alcoholism on his mental stability did not automatically cease. He was in a "mental quagmire" for a number of years thereafter. He had no source of income when he came out of the hospital, and was borrowing extensively. Upon being urged to do so by one of the special agents during the course of their investigation, petitioner filed his delinquent returns for each of the years 1979-1982 on June 14, 1984. These returns were prepared for petitioner by his attorney, Robert M. Musselman, who continues to represent him. They were prepared upon the basis of petitioner's records, which were made available to the agents. The returns were subsequently audited by the IRS. Apart *445 from certain adjustments, the returns were accepted by the IRS as being substantially correct. The adjustments form the basis for the deficiency notice. The Commissioner does not contend that the returns were false or fraudulent or that any adjustments resulting in increased taxable income were based upon fraud relating to such items as reported by petitioner on the delinquent returns. Apart from an item of $ 216.89 interest income in 1979 and $ 1,500 capital gain in 1981, all income reported on petitioner's 1979-1982 delinquent returns represented his net profit from his services as business consultant shown on Schedule C of the respective returns. And the only other items involved in the computation of taxable income were the Schedule A itemized deductions (primarily interest expense) on the returns. Petitioner's reported taxable income, as adjusted by the deficiency notice, which was further modified by the stipulation of the parties, was as follows: [4]
Year
Taxable Income
1979
$ 39,957.61
1980
59,439.37
1981
89,860.62
1982
98,204.72
*446 On October 25, 1985, petitioner was charged in a criminal information in the United States District Court for the Western District of Virginia on four counts of willfully failing to file Federal income tax returns for the years, 1979, 1980, 1981, and 1982, in violation of section 7203 of the Internal Revenue Code. He was convicted on all four counts on the basis of a plea of guilty. Petitioner does not dispute in the present proceedings that he willfully failed to file returns for each of the years, nor does he dispute that by reason of the judgment of conviction collateral estoppel would in any event require a finding to that effect here. Castillo v. Commissioner, 84 T.C. 405, 409-410 (1985). However, willful failure to file is one thing, but fraud is quite another. Kotmair v. Commisioner, 86 T.C. 1253 (1986). Additions to tax for Fraud. In order to sustain its determination of additions to tax for fraud here, the Government must prove, by clear and convincing evidence, that some part of the undisputed underpayment for each year is due to fraud. Sec. 7454(a); Rule 142(b); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). *447 "Fraud is an actual intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982). To be sure, failure to file is persuasive circumstantial evidence of fraud, Castillo v. Commissioner, 84 T.C. at 409. (1985). But, "[f]ailure to file tax returns, without more, is not proof of fraud; such omission may be consistent with a state of mind other than the intention and expectation of defeating the payment of taxes." Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The record before us does convincingly show a protracted and intense bout with alcoholism that in our judgment could in this case explain petitioner's failure to file at least up to the time of his last hospitalization for alcoholism in 1973 or 1974. The circumstances thereafter up to and including the taxable years do indeed indicate that the reason for failure to file for the taxable years rests on a weaker foundation. However, petitioner's abstinence from alcohol beginning with that last hospitalization did not reflect a "cure." At most, there was a long tapering off *448 process thereafter, and petitioner continued to be in a "mental quagmire." When asked why he did not file the returns for the years in question he replied that he did not know what to do, that he was apprehensive about stirring up earlier years. Of course, this may not have been exculpatory in other circumstances. Cf. Beaver v. Commissioner, 55 T.C. 85, 93 (1970). But, on the basis of evaluating the cold record before us, petitioner's testimony carried a plausible ring of validity to it. We think it likely that petitioner in effect found himself here in a genuine Catch-22 situation, and that it is doubtful in the circumstances of this record that he really intended to defraud the Treasury. It must be remembered that the burden of proof was upon the Government to prove fraud by clear and convincing evidence. The burden was not upon the taxpayer. If the burden were upon him, we might perhaps conclude that he had not carried it. But the burden was not upon him; it was upon the Government, and a heavy one at that. Of particular significance here is the absence of the usual badges of fraud. Petitioner did not deal in cash. He kept extensive and reasonably complete *449 records. He did not have hidden bank accounts or concealed assets. He did not file any false documents with the IRS. He cooperated fully with the IRS agents, keeping nothing from them. [5] Although cooperation after failure to file has been discovered may not carry much weight, as shown in Estate of Ming v. Commissioner, T.C. Memo. 1976-115, that case is clearly distinguishable because there was other strong evidence of fraud there. To be sure, there are certain troubling aspects about this case. In petitioner's financial statements submitted to banks or other institutions, *450 presumably for the purpose of obtaining loans, petitioner did not disclose his potential liability for Federal income taxes. This case is not fairly comparable to McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F. 2d 1121 (5th Cir. 1975), and Afshar v. Commissioner, T.C. Memo. 1981-241, affd. without published opinion 692 F. 2d 751 (4th Cir. 1982), which held that a taxpayer's dishonesty in business transactions may be considered as evidence of his willingness or inclination to be fraudulent in other respects including an intent to evade taxes. Unlike those cases, there is no indication here that petitioner cheated any bank or financial institution, and the record in fact shows that he has faithfully been paying off the indebtedness that he incurred. In our judgment his financial statements in the context of this case constituted extremely weak evidence, if any at all, to support a finding of an intent to defraud the Treasury. The Government also relies upon petitioner's failure to file Virginia state income tax returns. Such failure, however, was no more significant here than petitioner's failure to file *451 the Federal income tax returns themselves. The record also shows that petitioner was chronically delinquent in paying state or local real and personal property taxes. On the whole, the picture that emerges is one of a weak, procrastinating person, but not of one who harbors the intent to defraud. The record is extensive and we have not undertaken to set forth a comprehensive and detailed account of the evidence. Suffice it to say, we have considered all of it, and have concluded that the Government has not carried its heavy burden of proving fraud with clear and convincing evidence. This opinion is hardly intended to establish a precedent that one can avoid the civil consequences of fraud by relying upon alcoholism as a defense. This case must be read in the light of the extreme nature of petitioner's alcoholism, its after effects, and all the other evidence of record. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 6653(b) was redesignated sec. 6653(b)(1) by the Tax Equity and Fiscal Responsibility Act of 1982, sec. 325(a) of Pub. L. 97-248, 96 Stat. 324, 616.↩
3. Sec. 6653(b)(2) was added by the Tax Equity and Fiscal Responsibility Act of 1982, sec. 325(a) of Pub. L. 97-248, 96 Stat. 324, 616.↩
*. This addition to tax is 50 percent of the interest on the underpayment as finally determined.↩
4. This schedule (with one correction) is taken from respondent's proposed finding 23, which was not objected to by petitioner. The one correction is for the year 1979, and would appear to be required only as the result of a typographical error. The figure proposed by respondent was $ 34,957.61. A computation based upon reported taxable income of $ 35,785.65 (Exhibit 2-B) as adjusted by the stipulated modifications of the deficiency notice (paragraphs 17 and 18 of the stipulation) shows taxable income to be $ 39,957.61, as against $ 35,957.61 in respondent's proposed finding, a difference only in the second digit, strongly suggesting a typographical error.↩
5. There was some indication prior thereto that petitioner made an incomplete or misleading oral response to a telephone inquiry in 1983 by a Service Center limited to the tax year 1981. In the context of the entire record, however, we do not regard that incident as detracting in any substantial way from petitioner's full and reasonably prompt cooperation with the IRS agents in respect of all four taxable years, 1979-1982.↩