DICK H. McKENZIE FAMILY ESTATE (A TRUST), GERTRUDE A. McKENZIE, TRUSTEE, ET AL. [1], Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Dick H. Family Estate v. Comm'r
Docket Nos. 6819-76, 9924-77, 9925-77, 9926-77, 9927-77.
United States Tax Court
T.C. Memo 1984-9; 1984 Tax Ct. Memo LEXIS 665; 47 T.C.M. (CCH) 834; T.C.M. (RIA) 84009; January 4, 1984. *665 During 1971, H and W formed a "family trust" and began selling to others the materials for the establishment of "family trusts." H and W filed no individual income tax returns for 1971 and 1972. For 1973 and 1974, they filed joint returns. H and W filed fiduciary returns for the family trust for 1972, 1973, and 1974. The individual and joint returns omitted income and overstated deductions; some of H and W's gross income was not reported on any return. Held, H and W, not the family trust, are taxable on all the income earned by them during 1971 through 1974. Held, further, the Commissioner's determinations of deficiencies against H. and W, as modified herein, are sustained. Held, further, H and W fraudulently underpaid their tax for each of the years 1971, 1972, 1973, and 1974. *666 Joseph W. Weigel, for the petitioners. Edward J. Roepsch, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: *667 Sec. 6653(b)
Docket No.
Petitioner
Year
Deficiency
I.R.C. 1954 [2]
6819-76
Dick H. McKenzie
1972
$10,909.21
$5,454.60
Family Estate
(A Trust)
9924-77
Estate of Richard H.
1971
6,659.65
3,329.82
McKenzie
1972
16,006.86
8,003.43
9925-77
Estate of Richard H.
1973
8,023.33
4,011.67
McKenzie and
1974
17,892.11
8,946.06
Gertrude A. McKenzie
9926-77
Gertrude A. McKenzie
1971
6,659.65
3,329.82
1972
16,006.86
8,003.43
9927-77
Dick H. McKenzie
1973
8,107.43
4,053.72
Family Estate
1974
18,475.45
9,237.73
(A Trust)
*668 Addition to Tax
Sec. 6651(a)
Sec. 6653(a)
Docket No.
Petitioner
I.R.C. 1954
I.R.C. 1954
6819-76
Dick H. McKenzie
Family Estate
(A Trust)
9924-77
Estate of Richard H.
$1,664.91
$332.98
McKenzie
4,001.72
800.34
9925-77
Estate of Richard H.
amounts not
McKenzie and
specified
Gertrude A. McKenzie
9926-77
Gertrude A. McKenzie
1,664.91
332.98
4,001.72
800.34
9927-77
Dick H. McKenzie
Family Estate
(A Trust)
After concessions by the parties, the issues remaining for decision are: (1) Whether the income reported by a family trust created by Richard McKenzie is taxable to the petitioners, individually; (2) whether the petitioners' income and income tax liabilities for 1971 through 1974 were understated as determined by the bank deposits method; and (3) whether the petitioners are liable for the additions to tax for fraud for any of the taxable years 1971 through 1974 under section 6653(b), or alternatively, for the additions to tax for failure to file returns for 1971 and 1972 under *669 section 6651(a) and for negligence or intentional disregard of rules and regulations for any of the years 1971 through 1974 under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Richard H. McKenzie and his wife, Gertrude McKenzie, resided in Janesville, Wis., when they filed the petitions in these cases. Mr. McKenzie died on November 19, 1980, and the Estate of Richard H. McKenzie, Deceased, Gertrude A. McKenzie, Special Administrator, was substituted for him as petitioner. Petitions were filed on behalf of an entity called the "Dick H. McKenzie Family Estate (A Trust)" which then had its principal office in Janesville, Wis. At times, Mr. and Mrs. McKenzie will be referred to as the petitioners. Prior to the years in issue, Mr. McKenzie had been a Lieutenant Colonel in the Air Force and an aeronautical engineer and had studied tax to some extent. Mrs. McKenzie had attended business school for a few months following her graduation from high school. On September 28, 1971, Mr. McKenzie signed a document titled "Declaration of Trust of This Constitutional Trust" which purported to create "The Dick H. McKenzie Family *670 Estate (A Trust)" (the family trust). The trust declaration empowered the trustees to, among other things, make "distributions of portions of the proceeds and income as in their discretion * * * should be made." A majority vote of all trustees was necessary for the trust to take any action. Mrs. McKenzie and James Walsh were named as the first trustees although Mr. Walsh resigned on September 30, 1971. Thereafter, in 1971, Mr. McKenzie became a trustee. The trust issued Mr. McKenzie all 100 "units of beneficial interest" on September 29, 1971. The certificate that evidenced the units provided "This Certificate conveys no interest of any kind in the Trust assets, management or control thereof." On November 1, 1971, the McKenzies caused Mr. McKenzie's certificate to be cancelled and new certificates to be issued, each for 50 units, to Mr. and Mrs. McKenzie. On November 2, 1971, the McKenzies cancelled their certificates and had the family trust issue a certificate for 50 units to an entity called "The McKenzie Educational Trust" (the educational trust) and a certificate for 50 units to an entity called "The McKenzie Research Trust" (the research trust). Mr. McKenzie created *671 both the educational trust and the research trust on November 2, 1971. The McKenzies were the trustees of both trusts. On September 29, 1971, the McKenzies transferred to the family trust certain property, including their Janesville residence, a lot in Colorado, insurance policies, and other personal property. Mr. and Mrs. McKenzie each purported to transfer to the family trust "the exclusive use of my lifetime services and all of the currently earned remuneration accruing therefrom." In the spring of 1973, James R. Hillman, Mrs. McKenzie's son, became a trustee of the family trust. Oscar T. Burns, who was Mrs. McKenzie's stepfather, died on July 24, 1970, survived by his wife, Selma. At the time of his death, Mr. Burns owned an undivided one-half interest in real property located at 170 4th Street, Huron, Beadle County, S. Dak. (the Huron property). Mrs. Burns owned the other half of the Huron property. Mr. Burns left his interest in the Huron property, worth $30,000 on the date of his death, one-third each to his wife, Mrs. McKenzie, and Mr. Hillman. Mrs. Burns died on August 4, 1970, owing an undivided two-thirds interest in the Huron property (one-sixth from her *672 husband and one-half which she owned prior to her husband's death) worth $40,000 at the time of her death. Mrs. Burns left five-eighths of her interest in the Huron property to Mrs. McKenzie and three-eighths to Mr. Hillman. Mrs. McKenzie also received 1,870 shares of Channing Co. Special Fund stock, worth $1.40 per share on August 4, 1970, from her mother's estate. Mrs. McKenzie redeemed approximately 1112 shares on December 13, 1971, and received $2,247.64. On September 27, 1971, Mr. Hillman and his wife quitclaimed Mr. Hillman's five-twelfths interest in the Huron property to Mr. and Mrs. McKenzie for no consideration. On September 28, 1971, Mrs. McKenzie created the "170-Fourth Street S. W. Trust" (the Huron trust) to which she conveyed her interest in the Huron property. Mrs. McKenzie created the trust to liquidate the Huron property. Mr. McKenzie and Mr. Walsh were named trustees of the Huron trust. During 1971, Mr. Walsh resigned as a trustee, and Mrs. McKenzie, Mr. Hillman, and Mrs. Hillman became trustees. There is no evidence regarding the identity or existence of any beneficiaries of the Huron trust. On May 6, 1972, Mr. and Mrs. McKenzie and Mr. and Mrs. Hillman, *673 as individuals and as trustees of the Huron trust, sold the Huron property by warranty deed to a realty company for $95,000. The proceeds of the sale were deposited to the Huron trust bank account, No. XXX-032-1, at the Farmers and Merchants Bank, Huron, S. Dak. During the years in issue, the McKenzies maintained the following accounts, in which deposits were made as follows: 1971
1972
1973
1974
Bank of Janesville
account XX-422-5
$4,736.00
$32,263.49
$19,851.46
$34,715.15
Bank of Janesville
account XX-802-3
6,559.08
1,249.01
Bank of Janesville
account XX-397-9
4,621.14
Rock County Bank
account XXX-808-2
14,282.61
Merchants & Savings
account X-X631-0
2,953.76
1,507.91
Rock County Bank
account XXX-739-3
21,362.00
13,785.00
Farmers &
Merchants Bank
account XXX-032-1
100,149.13
Peoples State
Bank account
XX7-146
15,200.00
60,411.58
During the years in issue, the McKenzies were involved with several businesses. Safety Magic Sales Co. manufactured special automobile controls for the handicapped. Plastic Decal Co. made decals for aircraft. Technicolor, Inc., was involved with color film. The McKenzies were also *674 involved with distributing the products of an organization called Koscot Interplanetary, Inc. There is no evidence concerning the profitability of such businesses, nor concerning the extent of the McKenzies' involvement with such businesses. During all of the years in issue, the McKenzies sold family trust plans to individuals in the Wisconsin area. The prices which they charged for the trust materials varied from $1,750 to $20,000. Often, customers made checks for the trust materials payable to their own educational trusts, of which Mr. McKenzie was a trustee. Mr. McKenzie then endorsed such checks. Some of the payments were made to another purchaser of the trust materials, who in turn forwarded a portion of such payment to the McKenzies. Some purchasers paid the McKenzie family trust directly. Generally, the McKenzies deposited receipts from the sale of trust packages to their own educational trust bank account. The educational trusts were merely conduits through which sales receipts passed; they served no other purpose. The McKenzies then transferred the sales receipts to their family trust account. During their presentations to prospective trust purchasers, the McKenzies *675 stated, or played a recording that stated, that the trust permitted a taxpayer to control his tax liability. The purchaser was told that he could convey to the trust the right to receive his earnings and that, in return, the trust would pay for, and deduct, all of the purchaser's personal and living expenses except for food and clothing. The only income upon which the purchaser would be taxed would be the "fee" that he received for managing the trust, which fee the purchaser could set. The tape recording provided that no one could have access to trust documents without the consent of the trustees. The McKenzies advised trust purchasers regarding the completion and recordation of trust documents, as well as the completion and filing of individual and fiduciary tax returns. The McKenzies continued to sell trust plans during 1975 through 1980, even though they had by that time learned of rulings and court decisions denying the tax benefits which they claimed for such trusts. Mr. and Mrs. McKenzie filed no Federal individual income tax returns for 1971 or 1972. They filed joint Federal income tax returns for 1973 and 1974. No Federal returns were ever filed on behalf of the educational *676 trust, the research trust, or the Huron trust. The McKenzies filed fiduciary income tax returns (Forms 1041) on behalf of the family trust for 1972, 1973, and 1974. On their 1973 joint return, the McKenzies reported gross income of $1,220.00, consisting primarily of "cash and contract income" from the family trust. The 1973 return stated that no tax was due. On their 1974 joint return, they reported gross income of $1,046.96, again showing no tax liability. On its fiduciary income tax returns for 1972, 1973, and 1974, the family trust reported the following amounts of gross income and deducted the following amounts as "trust administrative expenses": Year
Income
Administrative Expenses
1972
$20,021.00
$22,994.10
1973
16,571.77
20,503.02
1974
36,540.15
28,762.40
On its return for 1974, the family trust reduced its taxable income to zero by deducting a $100.00 exemption and $6,482.97 as a distribution to beneficiaries. During 1974, the holders of the units of beneficial interest in the family trust were the educational trust and the research trust. On the family trust returns for 1972, 1973, and 1974, the McKenzies deducted as administrative expenses *677 the cost of utilities, insurance, telephone service, and repairs that were at least partially attributable to their personal residence. The trust also deducted the cost of cars "leased" from the McKenzies and medical expenses that the McKenzies incurred. The trust deducted the cost of travel and entertainment undertaken by the McKenzies. There is no indication what portion, if any, of such "administrative expenses" was properly deductible as expenses incurred in the sale of family trust plans or in connection with any of the other businesses. The petitioners refused to cooperate at all with the Commissioner's agent during his conduct of an examination of their 1971 through 1974 tax liabilities, and they withheld from his all documents, books, and records in their possession relevant to their tax liabilities, in spite of his requests for such material. The petitioners also urged their banks not to cooperate with the Commissioner's investigation. During 1976, the McKenzies sued to enjoin the Commissioner's investigation, but such suit was dismissed. To protect his interests, the Commissioner issued individual notices of deficiency to Mr. and Mrs. McKenzie for 1971 and 1972 *678 in which he attributed the entire amount of alleged unreported income to each of them. He also issued a joint notice of deficiency to the McKenzies for 1973 and 1974. Finally, he issued notices of deficiency to the family trust for 1972, 1973, and 1974 in which he adopted the position that the trust was a separate taxable entity. However, in his notices of deficiency issued to the McKenzies, the Commissioner adopted the alternative position that the trust should be ignored for income tax purposes and that its income should be attributed to the McKenzies for 1972, 1973, and 1974, and at trial and in his brief, the Commissioner adopted that position and abandoned his argument that the trust was taxable in such income. In the discussion that follows, we will not consider the theories that the Commissioner has abandoned. In his notices of deficiency, the Commissioner determined the McKenzies' gross receipts by use of the bank deposits method. For the taxable year 1971, the Commissioner also determined that the McKenzies had realized a gain from the sale of the Channing Co. stock. The Commissioner allowed the McKenzies the standard deduction and the personal exemption for 1971. For *679 the taxable year 1972, the Commissioner determined that the McKenzies had realized a gain on the sale of the Huron property. The Commissioner allowed the McKenzies a deduction for business expenses, the standard deduction, and the personal exemption. For 1973 and 1974, the Commissioner eliminated "consultant fees" from the McKenzies' income and allowed them deductions for business expenses, as well as the standard deduction and the personal exemptions. OPINION The first issue for decision is whether the income reported by the family trust is taxable to the trust or to the petitioners. The Commissioner maintains that such income is taxable to the petitioners for three alternative reasons: (1) Because the trust has no economic substance; (2) because the trust effects an anticipatory assignment of income; and (3) because of the applicability of the grantor trust provisions of sections 671 through 677. We will first consider the Commissioner's argument under the grantor trust provisions. When the grantor of a trust retains any of the powers described in sections 673 through 677, he is treated, for income tax purposes, as the "owner" of that portion of the trust over which the *680 power extends. Where the grantor is so treated, section 671 includes in his income "those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent such items would be taken into account * * * in computing taxable income or credits against the tax of an individual." Secs. 1.671-2, 1.671-3, Income Tax Regs. One of the retained powers which will trigger the operation of the grantor trust provisions is described in section 674. Section 674(a) provides that the grantor shall be treated as the "owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party." This Court and others have repeatedly held that taxpayers cannot dodge their tax liabilities through the creation of so-called "family trusts." See Luman v. Commissioner,79 T.C. 846, 852 n.4 (1982). The present case requires the same conclusion. Under *681 the terms of the family trust declaration, the petitioners, who constituted a majority of the trustees of the family trust beginning in 1971, were authorized to distribute trust income and proceeds in their discretion. The declaration further provided that resolutions of the board of trustees authorizing a thing to be done were evidence that such act was within the trustees' power. Finally, the certificates of interest in the trust provided that they conveyed no interest in trust assets or management. Although the research trust and the educational trust were the nominal beneficiaries of the family trust after November 1971, there is no indication that such trusts ever received any distributions. Furthermore, although both the educational trust and the research trust purported to be charitable organizations under section 501(c)(3), there is no evidence that either trust ever applied for or was granted tax exempt status under such section. Mrs. McKenzie testified that neither trust ever engaged in any charitable activities, and she admitted that the educational trust served merely as a conduit to funnel proceeds from the sale of trust packages to the family trust. The petitioners' *682 exercise of their powers over the family trust was in no way limited by the existence of the educational and research trusts. Indeed, we are unable to perceive any limits upon the petitioners' powers regarding the family trust other than those which might be imposed by local law. Mr. McKenzie and his wife had the power to control and dispose of trust income; consequently, all income reported by the trust for 1972, 1973, and 1974 is attributable to them pursuant to sections 674(a) and 671. Schulz v. Commissioner,686 F. 2d 490 (7th Cir. 1982), affg. a Memorandum Opinion of this Court; Wesenberg v. Commissioner,69 T.C. 1005 (1978). In view of that conclusion, we need not consider the Commissioner's other arguments for attributing the trust income to the McKenzies. The second issue for decision is whether the petitioners understated their income tax liability for each of the years 1971 through 1974, as determined by the Commissioner by use of the bank deposits method of proof. The petitioners were engaged in several income-producing activities during the years in issue, and the proceeds of such activities were deposited in their bank accounts. *683 The petitioners filed no individual income tax returns for 1971 and 1972; the trust returns which they filed for 1972, 1973, and 1974, as well as the joint returns which they filed for 1973 and 1974, all were based on the erroneous assumption that the income which the petitioners earned was taxable to the family trust. The petitioners refused to cooperate at all with the Commissioner's agent during his conduct of an examination of their 1971 through 1974 tax liabilities, and they withheld from him, in spite of his requests, all the documents, books, and records in their possession relevant to their tax liabilities. The petitioners also urged their banks not to cooperate with the Commissioner's investigation. Under such circumstances, use of the bank deposits method to prove income has long been accepted. Goe v. Commissioner,198 F.2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court; Halle v. Commissioner,175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Estate of Hague v. Commissioner,132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Mauch v. Commissioner,113 F.2d 555 (3d Cir. 1940), *684 affg. 35 B.T.A. 617 (1937); Nicholas v. Commissioner,70 T.C. 1057 (1978); Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Harper v. Commissioner,54 T.C. 1121 (1970). The taxpayer bears the burden of proving that the Commissioner's determinations are erroneous, arbitrary, or unreasonable. Cracchiola v. Commissioner,643 F.2d 1383, 1385 (9th Cir. 1981), affg. per curiam a Memorandum Opinion of this Court; Marcello v. Commissioner,380 F.2d 494 (5th Cir. 1967), affg. a Memorandum Opinion of this Court; Estate of Mason v. Commissioner,supra.
The petitioners have made no specific challenges to the Commissioner's determination of those portions of their bank deposits that represented taxable receipts. The parties stipulated the total deposits in the petitioners' bank accounts during 1971 through 1974. In their answers to the Commissioner's interrogatories, the petitioners admitted that, during the years in issue, *685 they received no gifts, inheritances, or other nontaxable or excludable funds other than those which the Commissioner had accounted for in his determination of net taxable deposits. Finally, Mrs. McKenzie testified that she had no substantial disagreement with the Commissioner's determination of that portion of the deposits to each account which represented taxable receipts. Accordingly, we sustain the Commissioner's determination of the McKenzies' net taxable bank deposits. Shortly before the trial of this case, the Commissioner discovered bank account No. X-X631-0, maintained by Mr. McKenzie at the Merchants and Savings Bank, and related to Safety Magic Sales Co. The Commissioner amended his answers in docket Nos. 9924-77 and 9926-77 to claim increased deficiencies based upon his determination that a portion of the bank deposits in such account represented income taxable to the McKenzies for 1971 and 1972. Although the Commissioner bears the burden on proving that his determination of net taxable deposits to account No. X-X631-0 is correct (Rule 142(a), Tax Court Rules of Practice and *686 Procedure[3]), we believe that he has sustained such burden, since total deposits in such account for 1971 and 1972 were stipulated and since Mrs. McKenzie agreed that the Commissioner's determination of net taxable deposits in all accounts was essentially correct. The Commissioner also determined that Mrs. McKenzie realized a capital gain of $344.94, net of the section 1202 deduction, on the 1971 redemption of the stock which she inherited from Mrs. Burns. The petitioners introduced no evidence to contradict the Commissioner's determination. The date of the redemption, the number of shares redeemed, and the amount realized on the redemption were evidenced by a confirmation slip issued by the Channing Co. Finally, there is no doubt that the shares were redeemed by Mrs. McKenzie individually, and not for the benefit of the estate of Mrs. Burns, since the redemption occurred 4 months after the final distribution of the assets of the estate. Thus, we sustain the Commissioner's determination with respect to the stock redemption. The Commissioner further determined that Mrs. McKenzie realized *687 a capital gain of $10,208.33, net of the section 1202 deduction, on the 1972 sale of the Huron property. Mrs. McKenzie contends that the gain realized on such sale was taxable to the Huron trust. The Huron trust declaration, executed by Mrs. McKenzie as grantor, contained language identical to that used to create the family trust and was, in fact, the standard family trust form. Mrs. McKenzie, who owned seven-twelfths of the Huron Property, and Mr. Hillman, who owned five-twelfths of such property, were trustees of the Huron trust. There is no evidence that the Huron trust ever had any beneficiaries or that the trustees ever had any meethings or authorized any action. Although Mrs. McKenzie testified that she prepared at least one tax return on behalf of the Huron trust, there is no evidence that any such return was ever filed or that the Huron trust ever paid any tax on the gain on the sale of the Huron property. Moreover, checks totaling at least $12,575.60 were drawn on the Huron trust bank account after the sale of the Huron property and deposited in the McKenzies' other accounts; yet, there is no evidence that such distributions were ever authorized by the trustees. Nor *688 is there any evidence that Mrs. McKenzie and Mr. Hillman ever felt themselves bound by fiduciary standards in dealing with the Huron property or that they ever surrendered the right to beneficial enjoyment of it. On this record, we conclude that, for purposes of Federal income tax law, the Huron trust was a nullity, a formalistic shell designed to shift tax liability away from Mrs. McKenzie. We have held that such shams are ineffective to relieve their creators of the burdens of taxation. Markosian v. Commissioner,73 T.C. 1235 (1980). Accordingly, we sustain the Commissioner's inclusion of seven-twelfths of the gain on the sale of the Huron property in Mrs. McKenzie's income for 1972. In his notices of deficiency, the Commissioner allowed the petitioners deductions for business expenses and excluded consulting fees in the following amounts: Year
Business Expenses
Consulting Fees
1971
1972
$9,169.29
1973
4,560.38
$1,136.10
1974
10,477.78
930.67
The Commissioner served certain requests for discovery on the petitioners, and when they failed to respond to such requests, he moved for an order compelling responses. On August 7, 1981, this *689 Court granted such motion and ordered the petitioners to produce, among other things, all books and records relating to their business expenses during the years in issue. Such materials were to be produced on or before september 10, 1981. The petitioners refused to comply with this Court's order. The week before the trial of this case, Mrs. McKenzie delivered a box of cancelled checks and other papers to the Commissioner's attorney, but she made no attempt to organize such materials or to explain the significance of each item. During the trial, Mrs. McKenzie attempted to introduce a schedule of the petitioners' business expenses during 1971 through 1974 and some supporting documentation. However, because of the petitioners' failure to comply with our order to produce such records, we refused to admit the petitioners' schedule or documents. Rule 104(c)(2); see generally Eisele v. Commissioner,580 F.2d 805 (5th Cir. 1978), affg. per curiam an unreported Order of this Court; Marcus v. Commissioner,70 T.C. 562 (1978). Thus, the petitioners introduced no evidence, other than some general, conclusory, and unpersuasive testimony by Mrs. McKenzie, *690 to prove that they incurred deductible business expenses in excess of those allowed by the Commissioner. Accordingly, we sustain the Commissioner's determination in this regard. The McKenzies did not file Federal individual income tax returns for 1971 and 1972, and for such years, the Commissioner issued separate notices of deficiency to Mr. and Mrs. McKenzie. In each notice, the Commissioner attributed to each taxpayer the total income received by both during each year, as determined by use of the bank deposits method. At the trial, the Commissioner stated that he was asserting these positions in the alternative. In his brief, the Commissioner argues that the gains on the sale of stock and of the Huron property are attributable to Mrs. McKenzie, but that all other income earned by the McKenzies during 1971 and 1972 should be allocated equally between them, in the absence of any evidence concerning which of them earned such income. Cf. Dixon v. Commissioner,28 T.C. 338 (1957); Calafato v. Commissioner,42 B.T.A. 881 (1940), affd. per curiam 124 F.2d 187 (3d Cir. 1941). We agree with the Commissioner that the gain on the stock *691 redemption is includable in Mrs. McKenzie's income for 1971 and that the gain on the sale of the Huron property is includable in her income for 1972. However, we believe that there is a better basis for an allocation of the remainder of their aggregate income for 1971 and 1972. The bank deposits method of proving income assumes that unexplained bank deposits constitute income subject to tax. In the present case, the parties have stipulated the names of the signatories for each account which the Commissioner used in his computation. Since we have such information, it is appropriate to conclude that the deposits in the accounts belonged to such signatories. Hence, net taxable deposits to accounts over which only one spouse had signature authority are attributable to that spouse alone; and one-half of the net taxable deposits to accounts over which both spouses had signature authority is attributable to each spouse. The third issue for decision is whether the petitioners are liable for the addition to tax for fraud for any of the taxable years 1971 through 1974 (section 6653(b)), or alternatively, whether they are liable for the additions to tax for failure to file returns for *692 1971 and 1972 (section 6651(a)) and for negligence or intentional disregard of rules and regulations for 1971 through 1974 (section 6653(a)). To support his claim of fraud, the Commissioner has the burden of proving, by clear and convincing evidence, that the petitioners fraudulently underpaid their income tax due for one or more of the years in issue. Sec. 7454(a); Rule 142(b); Levinson v. United States,496 F.2d 651 (3d Cir. 1974); Miller v. Commissioner,51 T.C. 915, 918 (1969). The Commissioner may prove fraud if he shows that the petitioners intended to evade taxes which they knew or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107 (1956). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *693 Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed ( Beaver v. Commissioner,55 T.C. 85, 92 (1970)), but fraud may be proved by circumstantial evidence, since direct proof of the taxpayer's intent is often not available. A taxpayer's entire course of conduct can often be relied on to establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). The Commissioner contends that the evidence clearly establishes that the petitioners fraudulently underpaid their income taxes for 1971 through 1974. He observes that they filed no individual returns for 1971 and 1972 and argues that the petitioners substantially understated their income in the joint returns which they filed for 1973 and 1974 and in the family trust returns which they filed for 1972, 1973, and 1974. The Commissioner asserts that the petitioners utilized the educational trust to conceal receipt of payments from the sale of trust materials and that Mrs. McKenzie established *694 the Huron trust to conceal the gain on the Huron property. The Commissioner contends that the petitioners' fraud is also demonstrated by their deducting personal and living expenses as trust administrative expenses for 1972, 1973, and 1974. Finally, the Commissioner argues that the petitioners attempted to conceal their fraud by refusing to cooperate with the Commissioner's investigation and by attempting to induce others not to cooperate. We conclude that the Commissioner has sustained his burden of proving an underpayment of tax for each of the years in issue. In so finding, we do not rely on the petitioners' failure to disprove the correctness of the Commissioner's determinations of deficiency.See Otsuki v. Commissioner,supra. At the trial, Mrs. McKenzie admitted that the Commissioner's determinations of the taxable deposits in the petitioners' bank accounts for each year in issue were essentially correct. Moreover, the petitioners admitted in answers to interrogatories that they did not receive any gifts, inheritances, or other excludable income during the years in issue not accounted for by the Commissioner. Finally, Mrs. McKenzie did not report, *695 on any return, the gain she realized on the stock redemption or the sale of the Huron property. In view of such evidence, it is clear that the petitioners substantially understated their gross income for each of the years in issue, even when the amounts reported on the family trust returns for 1972, 1973, and 1974 are considered as reported by the petitioners individually. Such understatements of gross income result in underpayments of tax, even if the petitioners individually are entitled to business expense deductions for all the trust's administrative expenses claimed on the family trust returns. We must now decide whether the Commissioner has proved that the petitioners' underpayment of tax for each taxable year in issue was fraudulent. The consistent and substantial omission of income and overstatement of deductions on returns which are filed, and the failure to file returns, are highly persuasive evidence of fraud. Marcus v. Commissioner,70 T.C. at 577, Harper v. Commissioner,54 T.C. at 1139, Smith v. Commissioner,31 T.C. 1, 9 (1958) (omissions); Neaderland v. Commissioner,52 T.C. 532, 540 (1969), *696 affd. 424 F.2d 639 (2d Cir. 1970), Strachan v. Commissioner,48 T.C. 335, 338-339 (1967) (overstated deductions); Habersham-Bey v. Commissioner,78 T.C. 304, 312 (1982) (failure to file). The petitioners filed no individual returns for 1971 and 1972, and on the returns for 1973 and 1974, they omitted virtually all of their income. On the trust returns that they filed for 1972, 1973, and 1974, the petitioners substantially understated their gross income and deducted as trust expenses many items of a clearly personal nature. The Commissioner has introduced compelling evidence that such conduct was not the result of ignorance or of a bona fide legal dispute. Mrs. McKenzie failed to report the gain that she realized in 1971 on the stock redemption. During 1972, she realized a gain in excess of $20,000 on the sale of the Huron property, but she did not report the gain on any individual or trust return. In this Court, Mrs. McKenzie admitted that the Huron trust was created solely to liquidate the Huron property, and she contends that her gain was taxable to the trust. However, her failure to report the gain on any return strongly *697 indicates that Mrs. McKenzie used the sham Huron trust to conceal her gain. During late 1971, the petitioners began selling family trust plans, and the unusual manner in which they received payment for trust plans also evidences a pattern of concealment. The petitioners required trust plan purchasers to create an "educational trust" and appoint Mr. McKenzie as a trustee. Each customer paid for the trust materials with a check payable to such educational trust. Mr. McKenzie endorsed such checks as trustee and deposited them to the account of his educational trust. The customers' educational trusts served solely as vehicles to pay the petitioners; such trusts had no other purpose. Mrs. McKenzie admitted that the McKenzie educational trust served merely as a conduit for the petitioners' sales receipts. The petitioners never explained the necessity of such a convoluted payment scheme to their customers; they merely assured each customer that such a procedure insured that the family trust was "legal." The evidence concerning the educational backgrounds of the petitioners is sketchy; but Mr. McKenzie was an aeronautical engineer, and Mrs. McKenzie attended business school for "a *698 few months" upon her graduation from high school. Mr. McKenzie had some tax training, and he researched the family trust concept extensively before becoming involved with it. Moreover, the McKenzies were involved with several businesses prior to engaging in sales of trust plans. Finally, during each year in issue, the petitioners repeatedly gave legal and tax advice to trust plan purchasers concerning the completion and recordation of various trust documents and the completion and filing of individual and fiduciary returns. The petitioners obviously had some sophistication in business and tax matters during 1971 through 1974. The conduct of taxpayers during years succeeding the years in issue may cast light upon the taxpayers' intent during the years in issue. Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court; Smith v. Commissioner,32 T.C. 985, 987 (1959). The petitioners continued to promote family trust plans long after the years in issue and after the courts had rejected such trusts as tax-saving devices. The petitioners were aware of adverse court decisions, but disregarded *699 them. The petitioners also refused to cooperate at all with the Commissioner's investigation of their tax liability. They also urged their banks to refuse the Commissioner's requests for their bank records. The petitioners refused to furnish any documents, books, or records to the Commissioner's agent during the investigation of their tax liabilities for 1971 through 1974. Finally, in January 1976, the petitioners sued to enjoin the Commissioner from inspecting their bank records, to quash the Commissioner's summons, and for damages, but the complaint was dismissed. The petitioners' persistent refusal to recognize adverse authority, their failure to cooperate with the Commissioner's investigation, and their attempts to hinder such investigation are all consistent with the pattern of the petitioners' willful refusal to pay their taxes. This is not the first time the Commissioner has asserted the fraud addition in a "tax protester" case. The petitioners' invocation of lofty constitutional principles cannot conceal the fact that evasion was the essence of their trust scheme. We are convinced that the petitioners were aware of their obligation to file truthful returns and to pay *700 tax and that the family trust concept was merely an evasion device. As we stated in Habersham-Bey v. Commissioner,78 T.C. at 313-314: Disclosure which was truthful, timely, and full might indicate an intention to present a test case. * * * We do not believe petitioner's actions * * * were done to create a legal test * * *. Instead, we are convinced that these actions were done to permanently deprive the Government of income taxes known to be due and owing. * * * Mrs. McKenzie's contempt for the tax laws was obvious to this Court--even now she argues that the family trust is a valid tax-saving device. Such a blatant disregard for the revenue laws, which we are convinced she shared with her husband during the years in issue, is fraud when it results in the attempted concealment of tax liability. Hebrank v. Commissioner,81 T.C. 640 (1983); Rowlee v. Commissioner,80 T.C. 1111 (1983), on appeal (2d Cir., Sept. 13, 1983). The Commissioner's determination of fraud is sustained for each of the years in issue. [4]
*701 Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners have been consolidated herewith: Estate of Richard H. McKenzie, Deceased, Gertrude A. McKenzie, Special Administrator, docket No. 9924-77; Estate of Richard H. McKenzie, Deceased, Gertrude A. McKenzie, Special Administrator, and Gertrude A. McKenzie, docket No. 9925-77; Gertrude A. McKenzie, docket No. 9926-77; and Dick H. McKenzie Family Estate (A Trust), Gertrude A. McKenzie, Trustee, docket No. 9927-77.↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
3. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
4. During the trial, the Court admitted into evidence, over the petitioners' objection of privilege, the testimony of an attorney retained by the McKenzies to examine the tax implications of family trusts. We also admitted the opinion letter prepared by him. At that time, the petitioners moved for a mistrial, and such motion was denied. In their brief, the petitioners renewed their contention that the attorney's testimony and letter were inadmissible under the attorney-client privilege, and they also renewed their motion for a mistrial. Since we have not relied to any extent upon the attorney's testimony or letter in our findings of fact or opinion, we have not set forth the reasons for admitting the testimony and denying the motion. We reaffirm our denial of the petitioners' motion for a mistrial. The Court also compelled Mrs. McKenzie to testify regarding her reasons for establishing the Huron trust over her assertion of her Fifth Amendment privilege against self-incrimination. In their brief, the petitioners renewed such objection. Mrs. McKenzie did not establish that the threat of criminal prosecution was anything other than speculative or remote, and her claim of privilege was not well taken. See Rechtzigel v. Commissioner,79 T.C. 132, 136-139 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983); Roberts v. Commissioner,62 T.C. 834, 838↩ (1974).