CARL A. AND SHARON A. COLLINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Collins v. Commissioner
Docket No. 17664-88
United States Tax Court
T.C. Memo 1991-553; 1991 Tax Ct. Memo LEXIS 601; 62 T.C.M. (CCH) 1186; T.C.M. (RIA) 91553; November 5, 1991, Filed *601 Decision will be entered under Rule 155. John Kennedy Lynch and Paul K. Kavanaugh, for the petitioners. Dawn M. Krause, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to tax in petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)(1) [1]
Sec. 6653(b)(2)
Sec. 6661(a)
1984
$ 17,454.03
$ 8,727.02 *
$ 4,363.50
1985
1,528.76
764.38 **
N/A
*602 The issues for decision are: (1) Whether petitioners received unreported income in the amounts of $ 54,136 and $ 4,159 during the taxable years 1984 and 1985, respectively; (2) whether petitioners are entitled to a net operating loss deduction under section 172 in 1984 or 1985 as a result of the seizure of petitioner Carl A. Collins' van by the Cuyahoga County sheriff in 1986; (3) whether petitioner Carl A. Collins is liable for additions to tax for fraud under section 6653(b)(1) and (2); and (4) whether petitioners are liable for an addition to tax under section 6661(a) for substantial understatement of income tax liability for the taxable year 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time they filed their petition in this case, petitioners resided in Strongsville, Ohio. Carl A. Collins (petitioner) was employed by Technicare Corporation (Technicare) from July of 1981 until December 21, 1984. During 1984, petitioner worked as a test engineer in Technicare's final assembly and test department. While petitioner was employed at Technicare, he *603 obtained computer equipment from his employer. Petitioner sold this equipment for profit doing business under the name "Cacogenics, Inc." (Cacogenics). Petitioner used business cards listing himself as president of Cacogenics, "A Division of XIX, Inc." Cacogenics has never been incorporated under the laws of the State of Ohio or any other State. XIX, Inc., is not now nor was it ever a corporation or a business in the State of Ohio. Petitioner used a post office box for the receipt of all Cacogenics' correspondence. Petitioner opened the post office box using the alias Carl A. Cole, Jr., and he used an erroneous Social Security number when opening the post office box. [2] On May 22, 1984, petitioner opened a checking account at the Central National Bank of Cleveland under the name Cacogenics listing himself as the proprietor and person authorized to sign on the account. During 1984, petitioner made sales *604 of computer equipment to Midwest Systems, Inc., of Burnsville, Minnesota (Midwest). Petitioner received $ 45,095 from the sale of computer equipment to Midwest during 1984. The dates and amounts for these sales were as follows: Purchase Date
Purchase Price
March 22, 1984
$ 1,075
May 9, 1984
700
June 13, 1984
2,125
June 19, 1984
2,300
August 14, 1984
15,000
September 25, 1984
18,000
October 3, 1984
2,500
October 26, 1984
3,000
On or about November 5, 1984
375
Total:
[3] $ 45,075
The proceeds of these sales were deposited into the Cacogenics account at the Central National Bank. Petitioners did not report income from any sales of computer *605 equipment during 1984. Sometime prior to February 19, 1985, the Federal Bureau of Investigation (FBI) began investigating alleged unlawful sales of stolen computer equipment. The FBI suspected that Cacogenics unlawfully sold some computer equipment across State lines. FBI Agent James Bentley (Agent Bentley) interviewed petitioner in connection with the investigation on February 19, 1985. This was Agent Bentley's first contact with petitioner and, at that time, petitioner was not a target of Agent Bentley's investigation. It was not until their second meeting on April 16, 1985, that Agent Bentley first told petitioner that he was a suspect in the FBI's investigation. On January 2, 1986, Sergeant Marcus Prewitt (Sergeant Prewitt) of the Cuyahoga County sheriff's department executed a search warrant for petitioner's 1985 Dodge van. Sergeant Prewitt prepared an inventory of the items he seized during the search of petitioner's van. The items seized with the van did not include documents indicating that petitioner purchased the equipment that he sold to Midwest or otherwise incurred expenses in connection with his computer sales business. On September 30, 1986, the Court of Common *606 Pleas for Cuyahoga County, Ohio, ordered that petitioner's 1985 van be forfeited to Cuyahoga County as a result of petitioner's having been found guilty of possession of criminal tools in violation of Ohio Revised Code section 2923.24 (1982). This finding of guilt was based on petitioner's plea of no contest. During 1984, petitioner Sharon A. Collins' aunt, Ms. Beatrice L. Basta, maintained a checking account and savings accounts at Dollar Federal Savings Bank and Ameritrust Company Bank. Ms. Basta also maintained a safe deposit box at the Dollar Bank. On November 21, 1984, and again on November 23, 1984, Ms. Basta withdrew cash from her safe deposit box. Ms. Basta withdrew a total of $ 7,500.00 from hersafe deposit box on these occasions. Ms. Basta gave this money to Sharon A. Collins as a loan. On April 24, 1987, a summons was served on First National Bank of Ohio requesting bank records relating to the examination of petitioners' income tax returns. On May 1, 1987, a summons was served on Society National Bank requesting bank records relating to the examination of petitioners' income tax returns. On June 2, 1987, petitioner filed petitions to quash the summons served on *607 the First National Bank of Ohio and the Society National Bank. OPINION The first issue for decision is whether petitioners received unreported income in the amounts of $ 54,136 and $ 4,159 during the taxable years 1984 and 1985, respectively. Respondent made his determination on the basis of his reconstruction of petitioners' income for these years based on petitioners' bank deposits. [4]
Respondent determined that petitioners' 1984 unreported income came from two sources: rents in the amount of $ 1,341; and equipment sales in the amount of $ 52,795. Petitioners admit that they received rents in the amount determined by respondent, and respondent stipulates *608 that petitioners are entitled to an offsetting deduction with respect to this rental income in the amount of $ 469. Petitioners also admit that they received $ 45,095 from the sale of computer equipment in 1984, but argue that they are entitled to offset this income with cost of goods sold in the amount of $ 21,000. Finally, petitioners argue that respondent erroneously included $ 7,500 from a nontaxable source, specifically a loan, in income pursuant to his bank deposits analysis for 1984. With respect to the taxable year 1985, the entire income adjustment in the notice of deficiency results from respondent's determination that petitioners received $ 4,159.00 from equipment sales in 1985. Respondent now concedes that $ 2,470.00 of the amount he determined in 1985 was not income to petitioners, and petitioners concede that $ 298.69 of the income determined by respondent for 1985 was in fact interest income to them. As to the balance, petitioners only argument is that respondent's use of the bank deposits method was improper because respondent failed to show that petitioner was engaged in the computer sales business in 1985. Respondent's deficiency determination is presumptively *609 correct, and the burden of proof is on petitioners to show that it is incorrect. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). 1984
Petitioners have failed to prove that they are entitled to an allowance for cost of goods sold in the amount of $ 21,000 for the year 1984. The primary evidence offered by petitioners to substantiate these costs consisted of copies of three receipts which they claim were issued by Technicare when petitioner purchased equipment which he resold to Midwest. However, Mr. Fox, who was director of support operations at Technicare and who was familiar with sales of obsolete equipment [5] to employees during this time, testified that these receipts were not the type of receipts issued by Technicare. Specifically, Mr. Fox testified that receipts used by Technicare were printed on different size paper than those offered by petitioners; that Technicare normally issued receipts for each piece of equipment, whereas petitioners' receipts listed more than one piece of equipment per receipt; that Technicare did not normally accept cash from employees, whereas two of petitioners' receipts indicated that the equipment was paid for by *610 cash; and that receipts for sales to employees contained a covenant not to compete clause, whereas petitioners' receipts did not contain the required covenant not to compete clause. Mr. Fox also testified that the receipts offered by petitioners lacked signatures by persons authorized by Technicare to sign such receipts. We believe Mr. Fox and find that the receipts which were offered by petitioners to substantiate their alleged costs were not issued by Technicare as petitioners contend. [6]
The other evidence offered by petitioners was petitioner's own testimony. We find petitioner's testimony *611 lacking in credibility. The record is replete with examples where petitioner failed to tell the truth. For instance, on a Technicare job opening form, petitioner represented that he attended Indiana University from September 1973 until December 1975 and received a B.S. in business administration and that he attended Case Western Reserve University from September 1981 until June 1983 and received a B.S. in biomedical engineering. Petitioner did not graduate from Indiana University, and he did not attend Case Western Reserve University during 1981 through 1983. Similarly, on an employment application with the Allen-Bradley Company, petitioner represented that he graduated from Indiana University in 1981 with a B.S. in business administration and that he graduated from Case Western Reserve University in 1983 with a B.S. in electronics and a B.S. in biomedical engineering. None of these representations are true. At trial, petitioner testified that he attended the University of Pennsylvania[7] in 1961 or 1962, the University of Colorado in 1964 or 1965, and the University of Mississippi in 1967. None of this is indicated on any of petitioner's job applications, nor is it indicated *612 on his application to Case Western Reserve University, which requires disclosure of this information. Moreover, on the Allen-Bradley job application, petitioner stated that he graduated from high school in 1967. Aside from the misrepresentations made by petitioner about his educational background, petitioner made numerous other statements directly related to this litigation which do not appear to be true. For instance, we believe the record indicates that petitioner fabricated the receipts which he submitted into evidence. We also do not believe petitioner's testimony that in February 1985, Agent Bentley of the FBI had told petitioner that he would be liable to Technicare *613 for the computer equipment which he sold. [8] Nor do we believe petitioner's testimony that the records necessary to substantiate his costs were confiscated by the Cuyahoga County sheriff's office. [9] We hold that petitioners have failed to substantiate their alleged cost of goods sold and therefore may not offset respondent's determination with these alleged costs. Petitioners also claim that respondent erroneously included $ 7,500 in his bank deposit analysis of petitioners' income. We find that petitioners have proven that $ 7,500 of the deposits that respondent determined represented income was from a nontaxable source. Specifically, this $ 7,500 was a loan from Sharon A. Collins' aunt. Petitioners presented the testimony of Mrs. Collins' aunt, Beatrice L. Basta. Ms. Basta testified that on November 21 and 23, 1984, she removed $ 7,500 from her safety deposit box at the Dollar Federal Savings Bank and that she loaned this money to Mrs. Collins on November 25, 1984, in exchange for *614 a promissory note from Mrs. Collins. A copy of the note that Ms. Basta said she received from Mrs. Collins was introduced into evidence. Mrs. Collins corroborated Ms. Basta's testimony. Ms. Basta's bank records show that at the end of 1984, Ms. Basta had a balance of $ 65,885 in her savings account at Ameritrust Company Bank indicating that she had the means for making this loan. We believe Ms. Basta and Mrs. Collins with respect to this transaction. We hold that respondent improperly included $ 7,500 as unreported income in his determination for 1984. [10]
*615 1985
With respect to respondent's determinations for 1985, we find that he did not err in determining the income which remains in dispute after the parties' concessions. Petitioners do not dispute the fact that respondent's income determination is based on their bank deposits. Instead, petitioners argue that respondent improperly used the bank deposits method because he failed to demonstrate that petitioner engaged in the computer sales business in 1985. None of the cases cited by petitioners support this proposition. [11] To the contrary, we have held that "A bank deposit is prima facie evidence of income, and respondent need not prove a likely source of that income," Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), and that "there is no requirement that respondent produce evidence linking petitioner to the income-producing activity as a precondition to requiring petitioner to meet his burden of proof." Tokarski v. Commissioner, supra at 76-77; see Parks v. Commissioner, 94 T.C. 654, 658 (1990). After reviewing the entire record, we find that petitioners fail to satisfy their burden of proving that respondent *616 improperly determined the income which remained in dispute after the parties' concessions for 1985. The second issue for decision is whether petitioners are entitled to a net operating loss deduction under section 172 as a result of the seizure of petitioner's van by the Cuyahoga County sheriff in 1986. We hold they are not. In order to have a net operating loss which could be carried back to either 1985 or 1984, petitioners must first prove they claimed the loss in 1986, and they were unable to deduct it because they had insufficient income in 1986 with which to offset the loss. Sec. 172(c). Petitioners did not even offer their 1986 Federal income tax return into evidence. And, although petitioner testified that he did not work in 1986, petitioners also failed to prove that they did not have income from other sources with which to offset *617 this loss. Moreover, the property was forfeited because it was used in the commission or attempted commission of a criminal offense. Under these circumstances, they still would not be able to deduct the forfeiture as a loss. Holmes Enterprises, Inc. v. Commissioner, 69 T.C. 114, 117 (1977); Holt v. Commissioner, 69 T.C. 75, 79-80 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980). [12]
The third issue for decision is whether petitioner Carl A. Collins is liable for additions to tax for fraud under section 6653(b)(1) and (2). Respondent bears the burden of proving by clear and convincing evidence that: (1) An underpayment exists for each of the years in issue, and (2) that some portion of each underpayment *618 is due to fraud. Sec. 7454(a); Petzoldt v. Commissioner, 92 T.C. 661, 698-699 (1989); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982); Rule 142(b). To meet his burden, respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never imputed or presumed. It must be established by independent evidence of a fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from proven facts because direct proof of a taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Rowlee v. Commissioner, supra. *619 The taxpayer's entire course of conduct may be used to establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Respondent has proven an underpayment for each of the years in issue by virtue of petitioners' concession that they had unreported income in these years. The real issue is whether a portion of the underpayment for each of the years is due to fraud. After reviewing the entire record, we find that a portion of the underpayment in 1984 was due to fraud, but we find that respondent has failed to prove by clear and convincing evidence that some portion of the underpayment in 1985 was due to fraud. 1984
Petitioner admitted that he knew that he had earned income in 1984 from the sales of equipment and that he knew that this income was taxable. Nonetheless, petitioner chose not to report this income. Petitioner's explanation for failure to report this 1984 income was that Agent Bentley told him at the February 19, 1985, meeting that he would probably be liable to Technicare for the equipment and because of this potential liability, he did *620 not feel he should report the income. Agent Bentley testified that petitioner was not a suspect when they met on February 19, 1985. Indeed, it was not until after petitioner filed his 1984 tax return that Agent Bentley first told petitioner that he was a suspect in the investigation. Agent Bentley testified that he never told petitioner that he could have a civil liability to Technicare as a result of his sales of equipment, and it seems very unlikely that Agent Bentley would offer petitioner this type of legal advice. We do not believe that Agent Bentley advised petitioner about petitioner's possible liability to Technicare at their meeting on February 19, 1985. Petitioner knew that he had earned income from computer sales in 1984 and that the income was taxable. Petitioner failed to report this income, and we do not believe petitioner's explanation for his failure to report the sales income. The record also reveals that petitioner failed to cooperate with respondent's agent and made false or misleading statements during his examination. Failure to cooperate and making false or misleading statements during an IRS investigation are indicia of fraud. Stringer v. Commissioner, 84 T.C. 693, 715 (1985), *621 affd. without published opinion 789 F.2d 917 (4th Cir. 1986); Rowlee v. Commissioner, supra at 1125; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Petitioner refused to supply respondent with requested documents during the audit. After moving to quash respondent's summons, petitioner met with respondent's agent and told him that he would supply him with the requested information, but by and large, he failed to do so. Petitioner told respondent that he was unable to provide respondent with the requested records because they were in the possession of the Cuyahoga County sheriff's office. Specifically, petitioner testified that the sheriff's office seized the original receipts which allegedly evidence his purchase of computer equipment and a journal documenting Cacogenics' transactions. Officer Prewitt testified that he did not seize these items. Another indicia of fraud is petitioner's use of a fictitious corporate name and Social Security number. Lipsitz v. Commissioner, 21 T.C. 917, 937 (1954); Milito v. Commissioner, T.C. Memo 1989-145; Cooperstein v. Commissioner, T.C. Memo 1984-290; *622 Yu v. Commissioner, T.C. Memo 1973-188. When petitioner applied for a post office box which he used for his computer sales correspondence, he used the alias Carl A. Cole, Jr. When applying for the post office box, petitioner provided a false Social Security number. Petitioner conducted business through a purported entity which he called Cacogenics, Inc. Cacogenics was not a corporation. Petitioner also misrepresented Cacogenics as a division of another nonexistent corporation called XIX, Inc.
Finally, for reasons previously stated supra pp. 9-10, we believe that the receipts which petitioner presented at trial as evidence that he paid $ 21,000 to Technicare in 1984 were falsified documents. We hold that respondent has shown by clear and convincing evidence that petitioner is liable for the addition to tax under section 6653(b)(1) and (2) for the taxable year 1984. 1985
With respect to 1985, we find that respondent has failed to satisfy his burden of proving fraud. Respondent showed by clear and convincing evidence that petitioner failed to report a small amount of interest income, but he did not show that this failure was due to fraud. With *623 respect to the remainder of respondent's determination for 1985, he has failed to prove the underpayment by clear and convincing evidence. The fact that respondent prevailed on the issue of a deficiency by virtue of a taxpayer's failure to satisfy his burden of proof, cannot be relied on to sustain respondent's burden of proving fraud. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). Respondent did not introduce direct evidence of the bank deposits which he claims he analyzed in determining petitioners' deficiency for 1985. Respondent has conceded most of the 1985 income which he originally determined in the notice of deficiency. We are left with a case in which respondent now alleges $ 1,390 in omitted income based on bank deposits. Respondent has failed to prove by clear and convincing evidence that part of an underpayment of tax for 1985 was attributable to fraud. The final issue for decision is whether petitioners are liable for additions to tax under section 6661(a) for substantial understatement of income tax liability for the taxable year 1984. Section 6661(a) imposes an addition to tax in an amount equal to 25 percent of the amount of any underpayment *624 attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). The amount of the understatement is equal to the excess of the amount of tax required to be shown on the return for the tax year less the amount of the tax shown on the return. Woods v. Commissioner, 91 T.C. 88, 94 (1988). An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $ 5,000. Sec. 6661(b)(1). The deficiency that we uphold for 1984 qualifies as a "substantial understatement" as defined in section 6661(b) and none of the provisions for reduction of the understatement contained in section 6661(b)(2)(B) apply. Accordingly, we hold for respondent on this issue. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * -- 50 percent of the statutory interest on $ 17,454.03, computed from April 15, 1985, to the earlier of the date of assessment or the date of payment. ** -- 50 percent of the statutory interest on $ 1,528.76, computed from April 15, 1986, to the earlier of the date of assessment or the date of payment.↩
2. Petitioner also used the name Carl Cole to transfer property to his wife by quitclaim deed on May 18, 1984.↩
3. We note a discrepancy of $ 20 between the amount stipulated by the parties as amount received from sale of the computer equipment and the sum of the purchase prices stipulated by the parties. Neither party addresses this discrepancy, but it appears that the difference represents an additional $ 20 paid by Midwest to petitioner to cover the costs of shipping.↩
4. This Court has repeatedly upheld respondent's use of this indirect method of income reconstruction. Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Huff v. Commissioner, T.C. Memo 1988-564↩.
5. Petitioner's testimony indicates that the equipment which he sold was either purchased as obsolete equipment from Technicare or removed from Technicare's garbage. ↩
6. We note that these receipts, which petitioners claim substantiate the $ 21,000 cost basis, reflect that petitioner only purchased equipment from Technicare on or after August 24, 1984. By this time, petitioner had already received $ 21,200 from sales to Midwest.↩
7. Actually, petitioner testified that he "went to the University of Pennsylvania, Penn State University." The University of Pennsylvania is located in Philadelphia, Pennsylvania, and Penn State University is located in State College, Pennsylvania. The two institutions are separate and distinct, and anyone who attended either would know this.↩
8. See infra↩ pp. 15-16.
9. See infra↩ pp. 16-17.
10. We note that after petitioners' concession of $ 45,095, and our resolution of the issue of the $ 7,500 loan, there is still $ 200 of unreported income which remains to be addressed. Petitioners failed to provide any explanation at trial or on brief as to this amount. Accordingly, we find that petitioners have failed to satisfy their burden of proof and hold for respondent with respect to this portion of his determination. See C.B.C. Super Markets, Inc. v. Commissioner, 54 T.C. 882, 891↩ (1970).
11. Indeed, all of the cases upon which petitioners rely involve criminal prosecutions for tax evasion in which the Government must prove its case beyond a reasonable doubt.↩
12. We note that the court order of the forfeiture states that the property was used in the commission or attempted commission of a criminal offense, thus indicating that allowing a deduction for the forfeiture would frustrate a sharply defined public policy.↩